---

### In re PIER 15, EAST RIVER.

(Supreme Court, Appellate Division, First Department. June 24, 1904.)

1. EMINENT DOMAIN—COMPENSATION—BASIS—IMPROVEMENTS.

In proceedings by a city to condemn a pier on which sheds had been erected, the owners of the pier were entitled to compensation based on the value of the pier with the sheds upon it, provided they were rightfully erected and maintained.

2. NAVIGABLE WATERS—PIERS—ERECTION OF SHEDS.

Laws 1875, p. 243, c. 249, provided that owners or lessees of any pier or bulkhead employed to receive and discharge cargoes might erect sheds upon such pier or bulkhead after having obtained from the city department of docks a license to erect or maintain the same, subject to the conditions of the license, and also declared all sheds erected on wharfs or piers under permit granted by the city department of docks to be lawful structures. *Held* that, where the lessee or owner of a pier obtained a license from the department of docks to erect a shed, the shed erected in pursuance of such license was a lawful structure, and the city authorities could not revoke the license given for its erection and maintenance.

3. SAME—LICENSES TO ERECT PIERS—CONSTRUCTION—REVOCATION.

A provision of the license that it should not prejudice any right or interest of the city to the pier, or to any structure legally erected thereon, including said shed, did not affect the rights which the owners of the shed acquired by virtue of the statute and license.

McLaughlin, J., dissenting.

Appeal from Special Term, New York County.

In the matter of the condemnation of one undivided half of Pier 15, East river. From an order confirming the report of commissioners of estimate, the property owners appeal. Reversed.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Truman H. Baldwin, for appellants.
Theodore Connoly, for respondents.

INGRAHAM, J. This proceeding was to condemn for public use a piece of real property known as the westerly half of Pier 15, on the East river. The commissioners reported that they had estimated this pier as a lawfully shedded pier, but not entitled to be maintained as such perpetually; that the authority for the shedding of the pier was a license revocable by the lawfully constituted authorities of the city of New York; that the city of New York, on taking proceedings to acquire title to the wharfage rights, terms, easements, and emoluments appurtenant to Pier Old No. 15, East river, not now owned by the city of New York, could not be held or required to pay for a license to shed the pier granted by themselves without compensation, but that they should pay for the structural value of the shed erected on said pier. To this report the property owners filed objections upon the ground that the commissioners were bound to estimate the pier as one which the owners had a right to maintain as a shedded pier.

It appears by the record that, if the owners of the pier had a legal right to construct a shed or other structure, the commissioners adopted an erroneous method, and the owners of the property were entitled to have it sent back to them to have a correct estimate of the value of the property made. The city of New York has taken property of these appellants without their consent. For that property the owners are entitled to be paid its fair market value, and if they had a right to maintain a shed upon the pier, which the city could not take away, they were entitled to have an award based upon the ownership of a pier upon which they had a right to maintain a shed. The question, therefore, is whether the pier was one upon which the owners had a right to maintain a shed.

According to the testimony of the appellants' witnesses, the pier with the shedding right was worth $40,000 more than without that right; and, according to the city's testimony, the difference was $34,000. It appeared from the report of the commissioners that, pursuant to the provisions of section 823 of the charter of the city of New York (chapter 378, p. 296, of the Laws of 1897), the fee of this property vested in the city of New York on the 3d day of November, 1900; that this pier had been owned by these appellants and their ancestors for upwards of 100 years, and was on the 10th of March, 1886, leased to William P. Clyde & Co., who were also the lessees from the city of New York of the easterly half of the pier; that on October 1, 1887, the dock department, pursuant to the provisions of chapter 435, p. 616, of the Laws of 1883, granted permission to W. P. Clyde & Co., occupants of the southerly or westerly half of Pier 15, East river, "to erect and maintain a shed on said pier for the discharge and reception of merchandise in transit from and to vessels lying thereat, provided that the consent in writing of the parties (or their authorized representatives) claiming to own a half undivided interest in the premises be obtained and filed in this department"; that the same was to be constructed and maintained

in conformity with plans and specifications to be approved by the board and in accordance with the requirements of the fire laws of the city of New York, "and provided that so much of the shed so constructed and maintained as covers the northerly one-half part of the said pier shall become the property of the city of New York, upon the expiration or sooner termination of the lease before mentioned, of the southerly side of said pier"; the northerly half of the pier being the property of the city. It was further provided that "this resolution shall not prejudice any right, title or interest of the city to the said pier or to any structures legally erected or that may be legally erected thereon, including the said shed."

This resolution having been passed by the Dock Department, the appellants or their lessees erected a shed upon such pier, which has been maintained by them to the time that the property vested in the city in this proceeding. Prior to the year 1875 the erection of any structures, except piers and bridges connecting with the streets outside of the bulkhead line, or line of solid filling, was forbidden by law. See Kingsland v. The Mayor, 110 N. Y. 569–577, 18 N. E. 435. It was there held that a license granted by the city before the act of 1875 to erect such a structure was unlawful, or, if lawful, was merely a license, and revocable in its nature—a privilege which the city might withdraw any moment, and which it was its duty to withdraw. In 1875 was passed chapter 249 (page 243) of the Laws of that year. It was provided that:

"Whenever any person, company or corporation, engaged in the business of steam transportation shall be the owner or lessee of any pier or bulkhead in the city of New York, and shall use and employ the same for the purpose of regularly receiving and discharging cargo thereat, it shall be lawful for such owner or for such lessee, with the consent of the lessor, to erect and maintain, upon such pier or bulkhead, sheds for the protection of property so received or discharged: provided, they shall have obtained from the department of docks, a license or authority to erect or maintain the same, and subject to the conditions and restrictions contained in such license or authority. All sheds or structures heretofore erected or maintained upon any wharf or pier in the city of New York, under any license or permit granted by the department of docks in said city, are hereby declared to be lawful structures subject to the terms and conditions of the license or permit authorizing the same."

This act was amended by chapter 435, p. 616, of the Laws of 1883, but the amendment is not material upon this question.

The appellants were the owners of the pier, and entitled to its unrestricted use, and to erect such buildings and structures upon it, subject, however, to the power of the Legislature to make reasonable rules and regulations for its use in connection with the commerce of the port of New York. In the absence of any legislative restriction, I presume. there can be no question but that they would have the right to erect a shed upon the pier for the protection of merchandise to be loaded upon or discharged from vessels at the pier. Whatever restriction the Legislature had imposed upon the structures to be placed upon this pier were removed by the act of 1875 to which attention has been called, and it was declared by that act that it should be lawful for the owners, or lessees with the consent of the owners, to erect and maintain upon such pier or bulkhead sheds for the protection of property received or discharged. If the act had stopped there, there could be no question but that the appellants would have owned a pier upon which they had a legal

right to erect a shed or other structure authorized by the act; but, before this authority could become absolute, the Legislature required that "a license or authority" must be obtained from the department of docks to erect or maintain the shed, but, when once that license or authority was granted, the shed became a lawful structure, and it was then lawful for the owners or lessees, with the consent of the lessors, "to erect and maintain" upon the pier or bulkhead sheds for the protection of property so received or discharged. There being no authority given to the dock department to revoke such license or authority when once given, when that authority was given the structure became by the force of the legislative enactment a lawful structure. It seems to me that the public authorities had no power to revoke the authority to erect a shed, and, when the city attempted to condemn it in this proceeding, they were bound to pay to the appellants the value of the pier with this right to shed the pier as an appurtenance to it. The department of docks have never attempted to revoke this authority or to make this shed an illegal structure; and when the city of New York, exercising the power of eminent domain, commenced this proceeding to acquire title to the property, it was a property to which these appellants were entitled to maintain this structure upon it, and it was the value of that pier, with the right to maintain this structure on the 3d day of November, 1900, to which these appellants were entitled.

No case is cited which has construed the effect of this statute of 1875, but it seems to me that it would be a clear violation of the right conferred upon the owners of these piers by the statute to say that, although the city had given its authority to erect a structure upon the pier, and the owners, in reliance upon the right conferred by the statute, with the consent of the city, had erected such a structure, the city could the next day revoke the authority, and make the structure an illegal one, which, by the express provisions of the statute, on obtaining the authority from the city, become a legal structure, and the owners authorized to maintain it. The provision in the license or authority granted by the dock department that it should not "prejudice any right, title or interest of the city to the said pier or to any structure legally erected or that may be legally erected thereon, including the said shed," did not affect the right of the appellants acquired by the provisions of the act after the city had authorized the erection of the shed. This provision was evidently for the purpose of preventing the act of the department of docks from being construed as a relinquishment of any right or title of the city in and to the pier. There was nothing in it that reserved the right of the city to subsequently revoke the authority that was given, and no property of the city was used in any way in the construction of this shed. The city has not authorized these appellants to erect a structure on the city property, but was exercising an authority conferred upon them by the Legislature to determine whether the use by the appellants of their own property was proper and consistent with the general commercial interests of the city; and while the authority given by the dock department was not to prejudice any right, title, or interest of the city to the pier, so long as the city had no right, title, or interest to it that proviso had no effect. There was nothing in the resolution that reserved the right of the city to revoke the authority once given,

and, that authority having been given, the right to erect and maintain that shed vested, by virtue of the statute, in the owners of the pier.

There is some question raised as to the effect of the plan made by the city for acquiring the docks or piers of private owners under chapter 574, p. 1231, of the Laws of 1871; but I can find no evidence in the record to show that the city filed such plan or proceeding under the provisions of that act, and there was nothing that authorized the city to appropriate the property of these appellants without paying them the fair value of the property in the condition and subject to the rights of ownership that existed at the time the property was taken. The dock department by this permit gave away no right of the city, authorized no use of the city's property, but simply authorized or made legal a right of these appellants to use their own property in a way authorized by the Legislature; and I do not believe that, that authority once having been given, the city could revoke it, and make what the Legislature had declared to be a legal structure on the pier illegal, or take away from these appellants the right to erect and maintain that shed, which by the express provisions of the act of the Legislature was given to them.

I think the order appealed from should be reversed, with costs, and the case sent back to the commissioners to make an award in accordance with the views herein expressed.

O'BRIEN, HATCH, and LAUGHLIN, JJ., concur.

McLAUGHLIN, J. (dissenting). I am unable to agree with a majority of the court as to the disposition to be made of this appeal. The appellants owned an undivided one-half of Pier 15, East river, which the city has taken in condemnation proceedings, and for which an award of $100,000 has been made. They claim that the award is inadequate, inasmuch as they had a perpetual right to shed the pier, and the testimony on their part before the commissioners appointed to ascertain the value of the part taken showed that, if they had such right, it was worth $140,000, while that on the part of the city showed a value of $134,000. The sole question presented, therefore, by the appeal, is whether the appellants did in fact have a perpetual right to shed the pier. If they did, then the order confirming the report of the commissioners fixing the damage should be reversed, and the matter sent back for a further hearing; otherwise it should be affirmed. No complaint is made but what a sufficient award was made for the shed itself, the complaint being directed simply to the right to perpetually maintain the same.

The shed in question was erected, with the consent of the appellants, by their lessee, William P. Clyde & Co., under a license granted to it by the department of docks on the 6th of October, 1887. That license was granted under authority conferred upon the dock department by chapter 249, p. 243, of the Laws of 1875, known as the "Shedding Act," as amended by chapter 435, p. 616, of the Laws of 1883. This act authorized the department of docks to grant licenses to the owners or lessees of piers or bulkheads in the city of New York to erect and maintain upon them sheds for the protection of property, subject to the conditions and restrictions contained therein. Prior to the passage of this

act there was no authority to give such permits, and all structures erected upon piers prior to that time were unlawful. People v. Mallory, 46 How. Prac. 281; People v. B. & O. R. R.; Co., 117 N. Y. 150, 22 N. E. 1026. The license to Clyde & Co., which was in the form of a resolution, authorized it to erect and maintain a shed on this pier, but a provision was inserted therein to the effect that the license should not "prejudice any right, title or interest of the city to the said pier or to any structure legally erected or that may be legally erected thereon, including the said shed." The legal effect of a license of this character was passed upon in Kingsland v. The Mayor, 45 Hun, 198. It is true the shed there was erected outside the bulkhead line, and while the court held there was no power vested in the dock department, under the shedding act, to give such permits, nevertheless what was said as to what the dock department could do under that act is applicable here. At General Term, Mr. Justice Daniels, delivering the opinion, referring to this subject, said:

"This statute * * * provided for nothing beyond a license or authority to erect or maintain the sheds. It did not provide for vesting in the persons to whom the privilege should be given any right to maintain the platform or shed for any particular period of time. But what was provided for was a license or authority which it was declared should be subject to the conditions and restrictions contained in such license or authority. * * * It is manifest, therefore, that no property right was designed to be, or was in fact, conferred or created by this resolution. It was a privilege granted subject to the existing laws providing for this improvement of the water front of the city, and made dependent by the resolution itself upon the pleasure of the board adopting it, and the right so to terminate it was exercised when this improvement was made in the year 1880. And in ending it in that manner no more was done than had the sanction of the law, as well as the condition on which the resolution was dependent."

This decision was affirmed by the Court of Appeals (Kingsland v. The Mayor, 110 N. Y. 569, 18 N. E. 435), Judge Finch delivering the opinion, during the course of which he said:

"In 1875 an act was passed, commonly known as the 'Shedding Act,' which authorized the department of docks to grant permits for the maintenance and construction of sheds upon the piers or bulkheads. But these permissions were revocable in their nature, without consideration, and expressly subject to the rules and regulations of the department of docks, to whose discretion the matter was confided."

In 1871 (chapter 574, p. 1231, Laws 1871) the city was authorized to change docks and piers, and the wharfs of private owners, were to be purchased by agreement, or taken in the ordinary manner by proceedings under the right of eminent domain. The act vested in the department of docks authority over the whole system, and contemplated their being subsequently acquired by the city. The license in question, having been granted subsequent to the passage of that act, was taken subject to it; but, to remove any doubt as to the preservation of the city's rights, a provision was inserted that the granting of it should not prejudice any right, title, or interest of the city to the said pier, or to any structure legally erected or that may be legally erected thereon, including the said shed; and in this connection it must be borne in mind that the city never received any consideration for the permit, nor does it, upon its face, purport to be perpetual. The license was revocable at the pleas-

ure of the city, and it was revoked by institution of the proceedings by which the city obtained the title.

I am also of the opinion that the dock department does not now, and did not at the time the license in question was given, have power to grant a perpetual one. There is no statute specially conferring such power, and an officer or department of the city government ought not to be permitted to give away such valuable rights without the sanction of the Legislature, expressed in unmistakable language.

The order appealed from should be affirmed, with $10 costs and disbursements.