(50 Misc. Rep. 477.)

In re PIERS OLD NOS. 19 AND 20 IN CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. May, 1906.)

EMINENT DOMAIN—MEASURE OF DAMAGES.

Where the city of New York brought proceedings to acquire title to a pier on which a shed had been erected by the owners of the pier by revocable permission of the municipality, a report of commissioners valuing the property as a shedded pier, and not as an open pier, was erroneous, as the taking of the property by the city was a revocation of the permission to maintain a shed, and as to that the owner was not entitled to compensation.

Proceedings by the city of New York to acquire possession of piers old Nos. 19 and 20. Commissioners' report modified.

Harris & Towne, for claimants.
John J. Delany, Corp. Counsel, for city.

BLANCHARD, J. This proceeding was instituted by the city of New York to acquire title to parts of certain piers. In valuing the westerly half of pier old No. 20, the commission assessed the property as a shedded pier, and not an open pier. The city opposes the motion to confirm the commissioners' report upon the ground that the method of valuation was erroneous. In 1873 the board of docks leased the easterly half of pier old No. 20, which half then belonged to the city, to C. H. Mallory & Co. for five years, and permitted said lessees to erect a shed on the pier, "provided they obtain and file in the department the written consents of the owners of the west half of the property." These consents having been obtained and filed, the lessees erected a shed upon the westerly half of the pier. In People v. Mallory, 46 How. Prac. 281, this permission was held void. By Laws 1875, p. 243, c. 249, § 1, however, all sheds "heretofore erected" were declared to be "lawful structures, subject to the terms and conditions of the license or permit authorizing the same." The shed erected in 1873, therefore, became a lawful structure; and, since the "permit authorizing the same" contained no provision for revocation, the permission to maintain said shed would seem, under the authority of Matter of the City of New York, Pier No. 15, 95 App. Div. 501, 88 N. Y. Supp. 906, to have been irrevocable. The language of the statute, however, limited the permission thus given

to the maintenance of the shed "heretofore erected." Accordingly, upon the destruction of the shed by fire in 1900 it became necessary to procure a new permission for the erection of a new shed. In 1900 "a temporary permit" was granted to C. H. Mallory & Co. to shed a portion of pier 20, the shed to remain "only during the pleasure of the board." Acting under this permit, which was expressly revocable in terms, and acting with full knowledge of the plan of the city to acquire the entire dock system in the area including the claimant's property and to end all private ownership along said water front (Laws 1870, p. 366, c. 137; Laws 1871, p. 1231, c. 574; Greater New York Charter, Laws 1901, pp. 347, 351, c. 466, §§ 819, 822), C. H. Mallory & Co. erected the present shed. Although, at the time the city acquired title to the property, the right of revocation contained in this permission had not been exercised, it nevertheless was a power which the city possessed. By bringing the present proceeding the city may well be regarded as having revoked the permission. Kingsland v. Mayor, 110 N. Y. 569, 18 N. E. 435. As was said by Finch, J., giving the opinion of the court in the case last cited (page 583 of 110 N. Y., page 440 of 18 N. E.):

"When the city acted, the inevitable result was twofold. It operated to destroy the wharf right which the plaintiff owned, and to that extent took from him his property. It operated also as a revocation, of the license or privilege given. The value of the one the city was bound to pay. The value of the other it was not bound to pay. It could, as it did, revoke the license by removing or directing the removal of the platform and shed without the least responsibility for the resulting injury. That the taking and revocation happened at the same time cannot alter the inherent character of either."

The value of the revocable shedding permit has been improperly included by the commissioners in their estimate of the value of the property taken by the city. The westerly half of pier old No. 20 should be valued as an unshedded pier; and, accordingly, the objection to the report must be sustained, and the matter referred back to the commissioners for revision and correction.

Ordered accordingly.