(117 App. Div. 553)
In re PIERS, OLD NOS. 19, 20, EAST RIVER, IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. EMINENT DOMAIN—COMPENSATION—IMPROVEMENTS.
    Under Laws 1875, p. 243, c. 249, providing that owners or lessees of any pier used to receive and discharge cargoes may erect sheds thereon on obtaining from the department of docks a license so to do, subject to the restrictions contained therein, etc., a shed erected by an owner or lessee of a pier in pursuance to a license given by the department of docks is a lawful structure, and the city in proceedings to condemn the pier must make compensation for the shed as appurtenant to it.

2. SAME.
    A city owning one half of a pier leased it to the individual owning the other half for a specified term, and granted him permission to erect a shed thereon in accordance with the fire laws of the municipality. The lease contained a covenant that, in case the pier should be required before

the expiration of the term, the same should be surrendered by the lessee on three months' notice without any claim for damages against the city. *Held*, that the shed erected on the pier by the lessee in pursuance of the license was a lawful structure independent of the term of the lease, and the city seeking to condemn the pier must pay damages therefor.

3. SAME.

A city owning half of a pier leased it to the individual owning the other half, and granted to him permission to erect a shed thereon. The permission was legalized by Laws 1875, p. 243, c. 249, providing that owners or lessees of any pier may erect sheds thereon on obtaining from the department of docks a license to do so. The shed erected under the license was destroyed by fire. *Held* that, in proceedings by the city to condemn the pier, the commissioners in valuing the pier must award damages based on the right to maintain a shed thereon.

4. SAME—ELEMENTS OF DAMAGE.

In a proceeding by a city to acquire a pier, a possible right to obtain a permit to erect a shed thereon, as authorized by Laws 1875, p. 243, c. 249, providing that owners or lessees of any pier may erect sheds thereon on obtaining from the department of docks a license so to do, subject to the terms of the license, is not a proper element of damages.

Appeal from Special Term, New York County.

In the matter of the application of the city of New York to acquire title to piers old Nos. 19 and 20, East river, occupied by Elbridge T. Gerry and others. From an order confirming the report of the commissioners in condemnation proceedings and to review an order (100 N. Y. Supp. 626) sending the report back to the commissioners, the city appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

William H. Harris, for appellants.

Theodore Connoly (Charles D. Olendorf, on the brief), and William B. Ellison, Corp. Counsel, for the city.

CLARKE, J. This proceeding was brought by the city of New York through the commissioner of docks to acquire the interests not owned by the city in pier old No. 19 and pier old No. 20, East river, and the bulkhead rights appurtenant to the bulkhead between said piers. While the right of the city and the claimants to the piers in question were undivided, yet said piers were, by practical construction, divided between the city and the claimants, so that the city was treated as the owner of the westerly half of pier old No. 19 and the easterly half of pier old No. 20; the other halves of the two piers being treated as in the ownership of the claimants. Pier old No. 19 was located at the foot of Fletcher street, extended from South street into the East river about 441 feet. It had no shed on it, and never had been shedded. Pier old No. 20 was located at the foot of Burling Slip, extending from South street into the East river about 417 feet. On July 3, 1873, a resolution was adopted by the board of docks, acting upon the request of G. H. Mallory & Co., who were then, and still were at the commencement of the present proceeding, lessees of the pier old No. 20, under the name of the New York & Texas Steamship Company, for permission to shed the pier, as follows:

"Resolved, that the portion of pier 20, East river, belonging to the City be leased to G. H. Mallory & Co., for the term of five years, * * * and further that permission be granted to said lessees (provided they obtain and file in the Department the written consent of the owners of the west half of the pier), to erect a shed on the pier, the same to be built in accordance with the fire laws of the city, and under the supervision of Superintendent Turner; said lease to contain a covenant that in case the pier shall be required, before the expiration of the above term, for making the contemplated bulkhead extension, the same shall be surrendered by the lessees upon three months' notice from this department, without any claim for damages against the city."

The necessary consent was given by the lessors and the pier was thereafter shedded. The shed then built remained until the year 1900, when in the month of May it was burned down, with the exception of some 30 feet at the end of the pier.

It is not disputed that the shed erected in 1873 under this permission was when built absolutely illegal. People v. Mallory, 46 How. Prac. 281, decided this point in regard to this very pier. Thereafter there was passed the statute known as the "Shedding Act" (chapter 249, p. 243, Laws 1875), which provided, among other things, as follows:

"Section 1. Whenever any person, company or corporation engaged in the business of steam transportation shall be the owner or lessee of any pier or bulkhead in the city of New York, and shall use and employ the same for the purpose of regularly receiving and discharging cargo thereat, it shall be lawful for such owner and for such lessee, with the consent of the lessor, to erect and maintain, upon such pier and bulkhead, sheds for the protection of property so received or discharged, provided they shall have obtained from the department of docks in said city a license or authority to erect or maintain the same, and subject to the conditions and restrictions contained in such license or authority, but all sheds or structures heretofore erected or maintained upon any wharf or pier in the city of New York under any license or permit granted by the department of docks in said city are hereby declared to be lawful structures subject to the terms and conditions of the license or permit authorizing the same. Such sheds shall be constructed subject to the regulations and under the authority of the superintendent of buildings and the department of docks."

The effect of this statute has been considered by this court in the Matter of Pier 15, 95 App. Div. 501, 88 N. Y. Supp. 906, affirmed 185 N. Y. 607, 78 N. E. 531. Mr. Justice Ingraham said in regard to a shed which had been erected under a license before the act of 1875 had been passed, in construing the effect of said act upon the rights of owners:

"There being no authority given to the dock department to revoke such license or authority when once given, when that authority was given the structure became by the force of the legislative enactment a lawful structure. It seems to me that the public authorities had no power to revoke the authority to erect a shed, and, when the city had attempted to condemn it in this proceeding, they were bound to pay to the appellants the value of the pier with this right to shed the pier as an appurtenance to it. The department of docks have never attempted to revoke this authority or to make this shed an illegal structure. When the city of New York, exercising the power of eminent domain, commenced this proceeding to acquire title to the property, it was a property upon which these appellants were entitled to maintain this structure; and it was the value of that pier, with the right to maintain this structure, to which these appellants were entitled."

It therefore follows that, if the situation in the case at bar is the same as that which was presented to the court in the case just cited, it would be governed by that controlling decision.

The learned corporation counsel attempts to differentiate, first, by claiming that the original permission to shed given by the resolution of the dock department in 1873 was by its terms a limited permit which might be terminated in three months and whose life was at best five years. He claims that this clause—"said lease to contain a covenant that in case the pier shall be required before the expiration of the above term, for making the contemplated bulkhead extension, the same shall be surrendered by the lessee upon three months' notice from this department without any claim for damages against the city"—sustains his contention. We do not so interpret the paper. The resolution provided for a lease of the portion of the pier 20 belonging to the city for the term of five years, and the clause alluded to had to do solely with the right of the city to cancel its lease for the city's half of the pier within three months without any claim for damages against the city for the cancellation of that lease. That provision could not be read into the rights of the owners of the half of the pier not belonging to the city, nor could the provision palpably relating to the lease be made to apply to the entirely independent provision giving permission to shed the whole pier; the only proviso as to that being that the lessees should obtain the consent of the owners of the other half of the pier, and that the shed, when built, should be built in accordance with the fire laws of the city. So far then as the first point is concerned, we construe this permit to shed as having been of the same character as that passed upon in the Matter of Pier 15, supra. The second point made is that the act of 1875, by the use of the language "all sheds or structures heretofore erected or maintained," confined the legalization of the sheds to those actually in existence at the time of the passage of the act, and that, the shed which was then in existence and was so legalized having been destroyed by fire in 1900, the license or permit to shed, which would otherwise have been irrevocable by the city under the Pier 15 Case, was nevertheless revoked by fire. It is claimed that this was the construction put upon the situation by the owners, and that they must be bound thereby. It appears that after the fire Mallory & Co. applied to the commissioners of the dock department for permission to shed part of the pier 20 in accordance with plans submitted, and that the owners joined in the application of G. H. Mallory & Co. "for permission to erect a temporary shed upon said pier as per plans to meet your approval," and that the dock department granted a permit thereon as appears by the following minute:

"From the President. 1st. Recommending that a temporary permit be granted to G. H. Mallory & Co. to shed a portion of Pier 20, East River, in accordance with plans submitted as amended, the shed to be erected under the direction and supervision of the Engineer-in-Chief of this Department and to remain thereat only during the pleasure of the Board. Recommendation adopted."

And it appears that the shed which was thereafter erected was erected in sections of 60 feet, with open spaces of 20 feet between the sections, which were subsequently filled by iron material obtained from another burned pier, and was correctly described in the evidence as a temporary or "patched up" affair.

While the facts are conceded, we do not agree with the inference

sought to be drawn. We take it that there are two separate things involved in the permit: First, the right to shed; and, second, the kind of shed to be erected. The first may be considered as in the nature of an incorporeal hereditament, a valuable right adding greatly to the value of the property, and, when once given by the city, conferring a property right irrevocable by it and not to be taken without due compensation. The second, a control of the character of the shed, its construction, and material subject to the police powers which, when necessity arises, may be applied. The right of an owner of land to build upon his property is subject to the regulation by the police power of the manner of construction and of the material used, and the right to require changes and additions to constructed buildings under said power has many times been applied and sustained by the courts.

If the right to shed obtained by the granting of the first permit, as subsequently legalized by the Legislature, should be confined to the structure then in existence, how much of a change in the building due to wear and tear, the actions of the elements, accident or disaster would destroy that valuable property right? It cannot be that such a right held to be irrevocable by direct action of the city would be subject to such charge or change. A portion of the original structure was still in existence when this proceeding was instituted. Is that portion of the pier to be considered as possessing the irrevocable right to be shedded with consequent compensation therefor, and the rest not? The moment it is conceded that the right to shed once granted is a valuable property right entering in, as an important element, to that due compensation which must be paid by the city before it can deprive the owner of his property in and to the pier and the rights appurtenant thereto, it must appear, it seems to me, that that right which has existed from 1875 down to 1900 could not be destroyed by the accident of fire, but that it was the duty of the commissioners in valuing pier 20 to value it as a pier to which the right was appurtenant to be a shedded pier, with all that that means to the owner in relation to the steam commerce of the port.

So far as pier 19 is concerned, for which no permit to shed had at any time been granted and which never had been shedded, we are satisfied with the decision of the court below. It would be going altogether too far into the realm of speculative finance to allow as an element of the value of a pier which had been for a long number of years in existence, and which never had been shedded, the possibility that inasmuch as it was a pier, the time might come when, upon application, the dock department might grant permission to shed it, especially as the dock department could attach conditions and restrictions to permits for sheds erected for the first time after 1875, and could make them revocable. A possible right to obtain a revocable permit is not a proper element of value.

It follows, therefore, that the order appealed from should be reversed and the report be sent back to the commissioners, with instructions to modify the same by treating pier 20 as a shedded pier, with an irrevocable permit and make their valuation accordingly, with $10 costs and disbursements to the appellants. All concur.