whether the action was at law or in equity; but, assuming that it was an action at law, the situation was different from that here presented, as in that case the plaintiff moved for a reference of the whole issues, to which the defendant objected, on the ground that he was entitled to have the issues raised by the reply to his counterclaim tried by a jury, and this court sustained that claim.

In an action at law there can be but one judgment, and that judgment can only be entered after all of the issues are disposed of. I know of no authority for the clerk or the court, on entering the judgment to which a party is entitled, to be compelled to offset the verdict of a jury on one side with the report of a referee or the decision of the court without a jury on the other, or go through any such computation or offset, and then enter a judgment upon the resulting balance in favor of one party or the other. The provisions of the Code in relation to the entry of judgment provide for several judgments in a case where an action is against two or more defendants. Code Civ. Proc. § 1205. Section 1228 of the Code of Civil Procedure provides for a judgment upon trial by court or referee of the whole issues of fact. In section 1225 of the Code provision is made for the judgment to be taken after certain issues have been tried by a jury; but that section applies only to an action triable by the court when one or more specific questions of fact arising from the issues have been tried by a jury. There is no provision which authorizes the entry of judgment in an action at law, where one issue has been tried by a jury and another issue presented by the pleadings tried by a referee. It seems to me that such a proceeding is quite unauthorized, is contrary to the fundamental principles upon which the trials of actions at law are based, and that in an action which from its nature is referable, or where any issue presented requires the examination of a long account and the court is satisfied, from the nature of the account and the proof necessary to sustain the cause of action, that a trial by jury is impracticable, the court should then refer the whole issues in the action to be tried by a referee. But in an action at law, if for any reason the whole issues should not be so tried, the court has no power to refer a particular issue for trial by a referee, leaving the remainder of the issues to be tried by a jury. It would appear that this action was not to be tried by a jury, and that the court would have been justified in referring all the issues for trial.

I think this order should be affirmed, with leave, however, to either party to renew the motion at Special Term to refer the whole issues in the action for trial. All concur.

---

### In re PIER OLD NO. 11, EAST RIVER.

(Supreme Court, Appellate Division, First Department. February 21, 1908.)

1. EMINENT DOMAIN—COMPENSATION—WHARFAGE RIGHTS.

By Greater New York Charter, Laws 1901, p. 351, c. 466, § 822, the commissioner of docks is authorized in his discretion, at any time, subject to the approval of the commissioners of the sinking fund, to acquire property rights in piers, and on approval, as authorized, to negotiate for a voluntary conveyance, and, in case of inability to agree on a pur-

chase price, he is authorized to direct the corporation counsel to institute eminent domain proceedings. The owner of a pier leased the same, and, pursuant to the lease, the lessee applied to the commissioner of docks for permission to erect an iron shed on the pier, which license was granted on condition that the owner should file an agreement that, in case the commissioner should decide on the appropriation of the pier, no additional value should be allowed by reason of the erection of the shed. The condition was agreed to by the owner and lessee, and after the erection of the shed the pier was condemned. *Held*, that the owner was not entitled to have the pier valued as a shedded pier, or to have the pier valued as one with an irrevocable license to maintain a shed in perpetuity.

2. SAME—WAIVER.

Though, pending the proceedings for condemnation, the comptroller, assuming to act for the commissioners of the sinking fund, sold the shed, it did not amount to a waiver by the city of its rights under the terms of the license, and did not authorize an award for the value of the shed.

3. SAME—AWARD TO LESSEE FOR UNEXPIRED TERM.

The lease provided that the lessor should not be responsible for damages to the tenant on the lessor's covenant for quiet enjoyment should possession of the property be taken by public authority, and it was provided that any award made for the property should be paid to the landlord, and further provided that the tenant should receive only such an award, if any, as might be made for its interest and the interest of the tenant in the shed, and that on the expiration of the term, or sooner termination of the lease, the shed should be surrendered to the lessor. *Held*, that the lessee was not entitled to an award for the unexpired term of the lease.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 421–424.]

Ingraham, J., dissenting.

Appeal from Special Term.

Application by the city of New York, acting through the commissioner of docks, relative to acquiring title to and possession of wharfage rights appurtenant to Pier Old No. 11, in the East River. From an order confirming the report of the commissioners of estimate and assessment, Edith C. Iselin and others appeal. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Frederick W. Whitridge (William H. Harris, on the brief), for appellant owners.

Michael J. Mulqueen, for appellant lessee.

Theodore Connoly (Charles E. Olendorf and Alex. L. Strouse, on the brief), for respondent, city of New York.

LAUGHLIN, J. This proceeding was instituted by the city through its commissioner of docks, to acquire the "right and title to and possession of the wharfage rights, terms, easements, emoluments, and privileges appurtenant to Pier Old No. 11, East River, in the borough of Manhattan, city of New York, not now owned by the city of New York, and all right, title, and interest in and to said pier or any portion thereof not now owned by the city of New York, and all wharfage rights, terms, easements, emoluments, and privileges appurtenant to the easterly one-half part of all that certain bulkhead, dock, or wharf property on or near the southerly side of South street, in said

borough and city, between the easterly side of Pier Old No. 10, and the westerly side of Pier Old No. 11, East River, not now owned· by the city of New York, for the improvement of the ·water front of the city of New York, on the East river." The title to the property vested in the city by nature of the proceeding on the 15th day of January, 1905.

By letters patent from the people of the state of New York, duly executed by the Commissioners of the Land Office, pursuant to authority of the Legislature, on the 28th day of September, 1871, the city acquired title to the land upon which this pier and bulkhead have been constructed. The pier in question was constructed by the owners of water lots on the East river lying immediately to the south of Old Slip, pursuant to an ordinance of the common council passed on the 1st day of June, 1801, and it has been extended and rebuilt pursuant to subsequent resolutions. The appellant owners have succeeded to the rights of the parties owning and interested in the pier bulkhead, and at the time title vested in the city they were entitled to maintain in perpetuity a pier and bulkhead of the dimensions ⌐s they then existed, and were also entitled to free and unobstructed use of the easterly side of the pier as a berth for vessels to be fastened thereto; but they did not own the bulkhead on that side of the pier. The commissioners awarded to the owners the sum of $184,329.99, but made no award to the appellant lessee. At the time title vested in the city, the property was in possession of the appellant lessee, under a lease in writing from the owners, bearing date the 1st day of November, 1902, which was for a term of 15 years and 3 months, commencing on the 1st day of February, 1903. The rent reserved was $11,500 per annum, commencing on the 1st day of May, 1903. It was expressly agreed in the lease that the tenant should immediately, after the execution thereof, make application to the board of· docks for a license or permit to erect and maintain iron or steel sheds on the pier and bulkhead, and in the event it should be unable to obtain the same prior to the 1st day of February, 1903, the lease should become null and void, but that, if the license or permit should be granted, it should thereupon forthwith proceed with the erection of the sheds at its own cost and expense, and should keep them in repair during the term, and should then, or on the sooner termination of the lessee, surrender them to the lessors, and they should become the property of the owners. The lease contained further provisions material to this appeal, as follows:

"And it is hereby further covenanted and agreed by and between the parties to these presents that in case the board of docks or other constituted authority now existing or to be created by law shall take possession of said demised premises the said parties of the first part shall not be held liable for any damages whatever sustained by the party of the second part (the tenant) by reason of any action of said department or public authority affecting the quiet possession of the said demised premises and in the event of said demised premises or any part thereof being taken in condemnation proceedings during the term of this lease it is further agreed that any award made therefor shall be paid to the parties .of the first part (the owners) and the party of the second part shall receive only such award if any as may be made in such proceedings for its interest in and under this lease and also the interest of the party of the second part in the shed or sheds upon said premises which shall be deemed for that purpose to be one-fifteenth of the amount awarded as

the value of such sheds for each unexpired year of said term and proportionately for each fraction of a year. And the said parties of the first part do covenant and agree that the said party of the second part, its successors and assigns, on paying the said rent and performing the other covenants aforesaid shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid without molestation or disturbance of or from the said parties of the first part, their heirs or assigns, subject nevertheless to the action of the government of the United States or of the state of New York, of the city of New York or other authority created by them respectively as hereinbefore expressed."

The lessee duly applied for the license or permit pursuant to its agreement, and apparently at the same time it and the owners applied to the commissioner of docks and ferries for a lease of the land under water in the easterly half of the slip between Piers 10 and 11, extending from the bulkhead as it existed at that time to the new bulkhead line adopted by the board of docks on the 3d day of November, 1899, for a term of 10 years from the 1st of February, 1903, with the privilege of renewal for a further term of 10 years, at a specified rental, and with the privilege of erecting and maintaining upon the land under water a pile platform, with shed thereon, the same to be erected in accordance with plans and specifications to be submitted to and approved by the commissioner of docks. It appears by an order—so designated—of the commissioner of docks and ferries, under date of December 16, 1902, that the commissioner agreed to lease to the appellant lessee the lands under water in the easterly half of the slip between Piers 10 and 11, as herein stated, upon certain conditions therein specified, among which was a condition that, in case the land should be required for improvement under the new plan, the lessee should, when so ordered by the commissioner, remove any and all structures erected by authority of the lease, and should make no claim or demand for the value thereof. This order also granted the application for a license or permit to construct the shed, in the following language:

"Permission be and hereby is granted the owners of Pier 11, East River, to erect a shed on said pier in accordance with the rules and regulations in such cases made and provided, and in conformity with plans and specifications to be first submitted to and approved by the commissioner of docks, all the work to be done under the direction and supervision of the engineer in chief of the department of docks and ferries. It being understood that this permit shall be of no force or effect unless the said owners or their authorized representatives shall file in this department a written agreement, to be approved as to form by the corporation counsel that in the event that the commissioner of docks shall decide that said pier is needed for the improvement of the water front that then and in such case no additional item of value shall be claimed or allowed by reason of the erection of a shed on said pier, and that no additional item of value shall be claimed or allowed beyond the value of the pier if no shed had been erected thereon, in any proceedings being instituted for the acquisition of said property either by purchase or condemnation."

The owners and lessee, by a letter under date December 26, 1902, addressed and delivered to the commissioner of docks and ferries, signed by their duly authorized attorney, reciting the order of the commission granting the lease to the appellant lessee and the permit for the erection of the shed in hæc verba, expressly accepted the lease

and license or permit, "together with all the terms and conditions as stated therein," and stated that they were ready and willing to duly and formally execute any and all papers connected therewith as might be required by the commissioner. It does not appear that he required the execution of any other paper.

On objection by counsel for the city, the commissioners excluded evidence with respect to the construction of the shed, the cost thereof, and its value; but it appears by a fair inference that the shed was duly constructed in accordance with the terms and conditions of the license or permit granted by the commissioner of docks, and, on cross-examination, a witness called by the owners testified that it was worth $30,000. In the decision which the commissioners filed with their report, they state that they valued the pier at $168,580 as an unshedded pier, which was at the rate of $10 per square foot, including the pier structure without the bulkhead, and that they valued the bulkhead at $15,750, which is at the rate of $300 per running foot. The commissioners determined the value of the pier upon the theory that it was an unshedded pier, and the principal contention of the owners on this appeal is that this was error.

We are of opinion that the owners were not entitled to have the pier valued as a shedded pier. The decision of this question depends upon the validity of and the construction to be placed upon the license or permit for the erection of the shed. It is contended by appellants, that the commissioner of docks, in acting upon an application for leave to erect a shed over a pier, was without authority to permit his decision to be influenced by the question as to whether or not granting the license or permit would subject the city to the payment of a larger award when it should become necessary to acquire the pier by condemnation proceedings. It is urged that in passing upon such permits the commissioner represents the people of the state, and not the city. The learned counsel for the appellants fail to give due weight to the provisions of the charter with respect to the powers and duties of the commissioner of docks. It appears that, pursuant to authority of the Legislature, a map or plan for the improvement of the water front on the East river was adopted by the commissioner of docks on the 13th day of April, 1871, and approved by the commissioners of the sinking fund on the 27th day of the same month; and that this was amended by a map or plan adopted by the board of docks on the 14th day of November, 1900, and approved by the commissioners of the sinking fund on the 26th day of October thereafter, which contemplated the acquiring of these and other similar property rights by the city ultimately. It further appears that pursuant to this plan the city was acquiring similar property in the near vicinity. The authority to determine whether such property rights shall be acquired rests in the first instance in the commissioner of docks, and is subject only to the approval of the commissioners of the sinking fund. Greater New York Charter, Laws 1901, p. 351, c. 466, § 822. The commissioner of docks was authorized in his discretion, at any time, subject to the approval of the commissioners of the sinking fund, to acquire this property. Where he deems it expedient that such property rights shall be ac-

quired and the commissioners of the sinking fund approve his deter-
mination, he is authorized to negotiate with the owners for acquiring
the same by voluntary conveyance, and in the event of his inability to
agree upon the purchase thereof at a reasonable valuation he is the
official who is authorized to direct the corporation counsel to institute
eminent domain proceedings. Greater New York Charter, § 822. The
application was made to the commissioner of docks for a license or
permit to erect a shed upon the pier, pursuant to the provisions of
section 844 of the Greater New York Charter, which confers authority
upon him to grant such application, subject to conditions and restric-
tions to be specified therein, the license or authority, when granted or
acted upon, not to be revoked by the commissioner without the consent
in writing of the mayor and commissioners of the sinking fund, after
duly hearing the licensee. The commissioner of docks, having au-
thority to determine, subject to the approval of the commissioners of
the sinking fund, to acquire the pier for public purposes, could have
so determined then, and might have denied the application upon that
ground. He did not deem it his duty, however, at that time, to initiate
proceedings to acquire the property, but he evidently apprehended that
it might be necessary to acquire the property within a comparatively
short time thereafter. He well may have doubted his right to revoke
a permit for the sole purpose of reducing the award to be made. Ac-
cordingly, instead of denying the application, he granted it upon con-
ditions which would enable the owners and lessee to have the benefit of
the use of the pier as a shedded pier until such time as he or his
successor in office should institute proceedings to acquire the prop-
erty, but at the same time protecting the city against an increased
valuation based upon the fact that the license or permit had been
granted, and he also incorporated a provision manifestly designed to
relieve the city, when it should become necessary to acquire this prop-
erty, from paying any added value on account of the shed itself as a
structure or building. It seems quite clear that the owners and lessee
are not in a position now to question the authority of the commis-
sioner of docks to exact these conditions. Although the question is
not now presented for decision, it may be observed that the view has
been expressed in some cases, if indeed the point has not been decided,
that the granting or withholding of such a permit or license rests in the
sound discretion of the commissioner, and that the property owner or
tenant is not entitled thereto as matter of right. Langdon v. The
Mayor, etc., 9 N. Y. St. Rep. 766; Langdon v. The Mayor, etc., 133
N. Y. 628, 31 N. E. 98. If the owners and lessee were of opinion or
were advised that the commissioner was without authority to exact all
or any of these conditions, they or it should have declined to accept
the license or permit on the conditions imposed, and should then have
applied to the court for a writ of mandamus to enforce any right they
claimed to have the permit granted with the elimination of the ob-
jectionable conditions. Having formally accepted each and every con-
dition imposed by the commissioner of docks, they should thereafter
be deemed estopped from questioning the validity thereof.

The appellants further claim that, assuming the conditions of the

license or permit to be binding upon them, the true construction is that in the event that it should become necessary for the city to acquire the property it should not be obliged to pay for the shed, but that there was no intention to deprive them of the right, in that event, to have the pier appraised as one with an outstanding irrevocable license or permit to maintain a shed thereon in perpetuity, which would very materially increase its value. As already indicated, it seems quite clear that the commissioner of docks intended by the clause in the permit to protect the city against such a claim. If we are right in the view that the owners were not entitled to an award upon the basis that this was a shedded pier, they were not entitled to have the award increased by a consideration of the possibility of their obtaining the right to shed the pier, which would be subject to revocation under the provisions of the statute. Section 844, Greater New York Charter; Matter of Pier Old Nos. 19 and 20, 117 App. Div. 553, 559, 102 N. Y. Supp. 667; Langdon v. The Mayor, etc., 9 N. Y. St. Rep. 766; Langdon v. The Mayor, etc., 133 N. Y. 628, 31 N. E. 98. See, also, Kingsland v. Mayor, etc., 45 Hun, 198; Id., 110 N. Y. 569, 18 N. E. 435.

It is also claimed by the appellants that the commissioners erred in excluding evidence with respect to the value of the shed and evidence tending to show that pending the proceeding, but some time after it was instituted and after title vested in the city, the comptroller, assuming to act for the commissioners of the sinking fund, sold the shed. Their theory with respect to the admissibility of this evidence is that, although the city may not have been obliged to acquire the shed, it waived its right under the license or permit and elected to acquire it, and has regarded it as acquired by this proceeding. The learned counsel for the city, in answer to this claim, says that the proceeding shows that the city only intended to acquire such title to the property as was not vested in the city, and that in view of this special agreement made between the appellants and the city by the license or permit they were not justified in inferring that the city contemplated acquiring the shed, and that if the city has appropriated the shed to its own use the appellants, if they did not lose their right to remove the shed, have a remedy by an appropriate action at law, and that these facts could not enlarge the jurisdiction of the commissioners to make an award for a shed in this proceeding. We agree with these views, and are of opinion that no error was committed in that regard.

The owners also claim that the award is inadequate. It is based upon conflicting evidence which fairly warrants the determination of the commissioners.

The only remaining question requiring special consideration is whether the lessee was entitled to an award for the unexpired term of the lease. The decision of this question is rendered more difficult, owing to the fact that the lease was made upon condition that the tenant should erect the sheds, keep them in repair, and surrender them in good order at the expiration of the term or sooner termination of the lease. They appear to have mutually acquiesced in the license or permit received, which, as we are holding, did not confer the right to continue the use of the pier as a shedded pier for any given time,

and was subject to annulment, in effect, at any time by action of the official who granted it. The rental reserved in the lease was doubtless fixed upon the theory that the pier would be used as a shedded pier, and that at the expiration of the term the landlords would receive it with the sheds properly erected and in good repair. This right could not be assured under the license or permit granted. Unless the rental value of the pier, as an unshedded pier, was more than the rent reserved in the lease, the tenant would sustain no damage, for that was the extent of his rights; and even then his right to compensation upon that theory would be doubtful, since he could not assure the surrender of the pier with the sheds upon it at the expiration of the period.

The provision of the lease with respect to awards was instituted upon the expectation that an irrevocable permit would be granted, and that the award would be based on the valuation of the pier as a shedded pier, and would embrace compensation for the sheds as well. In construing these provisions of the lease, therefore, this fact must be borne in mind, for it may by operation of law work a modification of the provisions of the lease with respect to the award, as it is impossible to make an award to the tenant on the theory contemplated, since the award, of which the tenant claims a part, was not and could not properly be made on that theory. Moreover, it is evident that the award made by the commissioners that they did not regard the rental value of the pier without a shed as equal to the rent reserved in the lease, and this is to be fairly inferred from the decision of the commissioners. If so, it would be futile to return the report to them to apportion the award between the landlords and tenant. It will be observed that it was expressly agreed in the lease that the landlords should not be responsible in damages to the tenant on their covenant for quiet and peaceable possession, should possession of the property be taken by public authorities pursuant to law. It is not expressly provided, however, that the lease shall thereby be terminated, and yet that may have been the intention of the parties, for of course there would be no liability for a breach of the agreement. The language is ambiguous with respect to the award to be made in the condemnation proceedings. It is first provided that "any award" made for the property shall be paid to the landlord; and then it is provided that the tenant shall receive "only such award, if any, as may be made in such proceedings for its interest in and under this lease and also the interest" of the tenant in the sheds which it is agreed in effect, shall be one-fifteenth of the award made for the shed for each remaining year of the term. There certainly is here no agreement that the tenant shall receive an award for the unexpired term. The most that can be said is that it was contemplated that he might be entitled to some award in addition to a share of the award for the sheds. Having due regard to the modifications of their rights effected by the granting of a license or permit, different from the one contemplated, and which in legal effect became null and void upon the institution of condemnation proceedings, I am of opinion that the case should be deemed controlled by Matter of Mayor, etc., of New York, 168 N. Y. 254, 61 N. E. 249, where the lease contained a clause to the effect that it should cease and

terminate in case the premises should be destroyed, or substantially changed by direction and authority of the department of docks or any other party having control of the wharves, piers, and waters of the city, and it was held that the lease was terminated by the condemnation proceedings, and that the tenant was entitled to no award. The provision in that lease, as has been seen, was not express that it should terminate by the institution of a proceeding to take the land in invitum, and the court did not so hold. It held, however, that the tenant leased the property subject to its being taken for public purposes, which was contemplated by the parties, and that in legal effect, although the term was for a specified number of years, it was to cease and terminate whenever the city instituted proceedings to acquire the property.

It follows that the order should be affirmed, with costs.

PATTERSON, P. J., and CLARKE and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). I have serious doubts whether the agreement contained in the license or permit to shed this pier was a "condition or limitation" within section 844 of the charter of 1901. By that section it was made lawful for the owner of a pier "to erect and maintain upon such pier or bulkhead sheds for the protection of property so received or discharged, provided he should have obtained from the commissioner of docks in said city license or authority to erect or maintain the same, and subject to the conditions and restrictions contained in such license or authority"; and all sheds or structures erected upon any wharf or pier under any license or permit granted by the commissioner of docks of the said city are declared to be lawful structures, "subject to the terms and conditions of the license or permit authorizing the same." When the owners of this pier received a license to erect a shed upon the pier, that shed then became a lawful structure, and the pier was one upon which the owners were authorized to construct a shed. The permit, however, provided that it should be of no force or effect unless the owner should file with the department a written agreement that in the event that the commissioner of docks should decide that said pier is needed for the improvement of the water front that then, and in such case, no additional item of value should be claimed or allowed by reason of the erection of the shed upon said pier, and no additional item of value should be allowed beyond the value of the pier if no shed had been erected thereon in any proceedings instituted for the acquisition of said property either by purchase or condemnation. The condition was that the license should be of no force or effect unless the owner of the pier should make an agreement with the dock department, and when he made such an agreement then the condition was complied with, and the license became effective, the owner's right to erect a shed upon the pier became absolute, and, under the section of the charter above referred to, the shed upon the pier became a lawful structure, and the pier one to which the right to shed was appurtenant. The license once having been granted, and its condition accepted by the owner,

neither the dock department nor any other municipal authority had the right to compel the owner to remove the shed or prevent him from maintaining it as a shedded pier. So I think the pier became one with a right to construct and maintain a shed without any restriction or condition annexed to it. The owner of the pier had, however, made an agreement with the department of docks which was based upon a good consideration, and which was enforceable, but as I read it there was nothing in that agreement that justified the commissioners in treating this pier as one to which there was no right to shed attached. The owner of the pier agreed that, if the commissioner of docks should decide that said pier was needed for the improvement of the water front, no additional item of value should be claimed or allowed by reason of the erection of the said shed on said pier, and that no item of value should be claimed or allowed beyond the value of the pier if no shed had been erected thereon in any proceeding instituted for the acquisition of said property either by purchase or condemnation.

It seems to me that this agreement related solely to the value of the structure erected on the pier, and was in no sense a condition which affected the value of the pier as one to which a shedding right was appurtenant. There was to be no additional item of value claimed or allowed by reason of the erection of the shed upon the pier. It seems to me that this agreement related to an award for the value of the shed that should have been erected upon the pier at the time the property was needed. We are not dealing with a condition or restriction contained in the license, but with an independent agreement made between the commissioner of docks and the owner of the pier, and it seems to me we must construe that agreement according to the language used, and are not justified in giving it a construction which would largely decrease the value of the property which the city is now proceeding to take against the wish of the owner for public use, unless the language used clearly requires such a construction. It seems to me that the condition imposed upon the owner of the pier by the license having been complied with, upon his making the agreement required by the commissioner, that license then became an absolute and unrestricted license to shed the pier, and that the agreement between the pier owner and the department related to the claim of an award on account of a structure erected upon the pier, and not upon the right of the owner to be paid for the pier as a pier with a right to shed appurtenant thereto.

I also think that the method adopted by the commissioners of estimate and assessment in ascertaining the value of this pier was wrong. What I think the pier owner was entitled to was the market value of the pier—what it would sell for if sold, and not a value based upon any capitalization of the actual wharfage collected from the property. The experts seem to testify as to value, not based upon its actual market value, but as to what its value would be based upon the amount of income that the pier owner could receive from a mere collection of wharfage. It seems to me that the commissioners should have awarded to the pier owner the amount that a sale of the pier would have realized based upon market value, and not upon theories as to the amount of wharfage that could be collected.

I also think that it was the duty of the commissioners to take evidence and determine the value of the lease to the tenant and make it an award. Under the terms of its lease it was provided that, if the demised premises should be taken in condemnation proceedings during the term of the lease, any award made therefor should be paid to the party of the first part, the owners, and the party of the second part, the lessees, should receive only such award as should be made in such proceeding for its interest in and under the lease and in the shed or sheds upon the premises. Whatever was the value of the tenant's interest, it was entitled to submit testimony to the commissioners, and was entitled to have an award made for that value, whatever it was.

For these reasons, I dissent from the affirmance of this order.