In re PIERS OLD NOS. 16 AND 17, EAST RIVER, IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 6, 1910.)

MUNICIPAL CORPORATIONS (§ 719*)—DOCK PRIVILEGES—LICENSE—REVOCATION.

Laws 1875, c. 249, § 1, provides that owners or lessees of any pier used to receive and discharge cargoes may erect sheds thereon, on obtaining from the Department of Docks a license subject to the restrictions contained therein, etc. Greater New York Charter (Laws 1901, c. 466) § 844, provides that, when such license has been granted and has been acted upon, it shall not be revoked by the dock commissioner without the consent in writing of the mayor and of the commissioners of the sinking fund after due hearing of such licensee. *Held* that, where the lessee of a pier had obtained two licenses to erect sheds thereon, the only way in which the permits could be revoked is prescribed by section 844, and, where the only action taken by the commissioner was a notice of revocation of the licenses without the written consents of the mayor and the commissioners of the sinking fund, the licenses were not revoked, so that, where the city took possession of the pier and sheds, the latter remained lawful structures erected and maintained under a valid and unrevoked permit, and the owner was entitled to compensation for their taking.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1532; Dec. Dig. § 719.*]

Appeal from Special Term, New York County.

Application by the City of New York to acquire title to and possession of wharfage rights, terms, easements, emoluments, and privileges appurtenant to Piers Old Nos. 16 and 17, East River, etc. From an order confirming the report of the commissioners of estimate and assessment, the city appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and CLARKE, McLAUGH-LIN, SCOTT, and DOWLING, JJ.

Theodore Connoly, for appellant.

Edmund L. Baylies, for respondent.

SCOTT, J.   The city of New York appeals from an order in this proceeding, in so far as it confirms the report of the commissioners of estimate and assessment awarding to James E. Ward & Co., a corporation, certain sums of money as damages for taking an iron shed and a wooden shed erected by the said corporation on Pier Old No. 17 East River.

No question is made as to the values placed upon these sheds; the only question raised being whether the respondent is entitled to any compensation at all.   The pier itself was concededly private property of which the respondent had been for many years the lessee; its latest lease from the owners having been made on March 26, 1902, for a term of five years, unless sooner terminated in consequence of the taking possession thereof by the city of New York.   The respondent had erected the sheds in question before the execution of said lease.   They were erected under permits granted by the Department of Docks under the provision of section 1 of chapter 249 of the Laws of 1875, well known as the shedding act.   The first permit, which covered the erection of the wooden shed, was granted on June 6, 1877.   It granted permission to James E. Ward & Co., lessees, to erect a shed in accordance with plans to be approved by the chief engineer of the department, and "to be removed when so ordered by the board or its successors, free from all claim whatsoever against the corporation, consequent upon such removal."   The second permit, under which the iron shed was built, was issued August 24, 1888, and granted permission "to extend from the present wooden shed, about one hundred and seventeen feet westerly, an iron shed."   The words contained in the permit of 1877, and quoted above, were not contained in the permit of 1888.   On March 3, 1905, the commissioner of docks served a notice upon respondent informing it:

"That any and all permits heretofore granted you for the erection or maintenance of sheds or other structures upon Piers 16 and 17, and upon the bulkhead between said piers are hereby revoked, to take effect immediately."

By the same notice the respondent was directed to proceed at once with the removal of said sheds and structures and to complete such removal on or before April 15, 1905.   The respondent was further advised that, in the event of failure to remove said sheds and structures before the specified date, they would be deemed to have been abandoned by the respondent and would revert to and become the property of the city of New York.   The respondent did not remove the sheds and structures, and they were on the pier when possession thereof was taken by the city.

This appeal presents the same question, although in a slightly different form, that has been much discussed as to the power of the Dock Department to qualify a permit issued under the shedding act, so as to provide for a revocation thereof, and of the rights created thereunder, by

attaching to the permit a condition that such permit and rights may be revoked at the pleasure of the city, for the stipulation quoted above from the permit of 1877 is in effect nothing more than a stipulation that the right to maintain the structure, granted by the permit, may be revoked at the pleasure of the Department of Docks, or when it shall require such removal. The subject was discussed at length in Matter of the City of New York, Pier No. 15, 95 App. Div. 501, 88 N. Y. Supp. 906, affirmed 185 N. Y. 607, 78 N. E. 531, wherein it was held, in effect, that the Legislature had conferred upon the Dock Department power only to authorize the construction of sheds, but had not conferred the power to revoke such permits, or to qualify them by a stipulation for revocation. This was followed in Matter of the City of New York, Piers 19 and 20, 117 App. Div. 553, 102 N. Y. Supp. 667. In Matter of the City of New York, Pier Old No. 11, 124 App. Div. 465, 109 N. Y. Supp. 2, affirmed 192 N. Y. 539, 84 N. E. 1123, upon which the appellant much relies, there was present not only a permit containing a proviso for revocation, but a distinct contract on the part of the licensee that, if the pier should be taken by the city of New York, no additional items of value should be claimed or allowed by reason of the erection of a shed on said pier, and that no additional item of value should be claimed or allowed beyond the value of the pier if no shed had been erected thereon. It was considered that the granting of the permit, which the commissioner of docks might, in his discretion, have refused, constituted a sufficient consideration for the special contract on the part of the licensee, and that the claimant was bound by the terms of that contract.

In the present case no such special agreement is to be found, and only as to the permit of 1877 for the wooden pier is there any attempt to impose a condition looking to a revocation. The mere acceptance of a permit containing an unauthorized condition was not equivalent to a contract to abide by the condition. Whatever doubt may have been entertained heretofore as to the power of the city to revoke such a permit the Legislature has now sought to resolve by section 844 of the Greater New York Charter (chapter 466, Laws 1901, and chapter 378, Laws 1897) which re-enacted section 722 of the consolidation act of 1882 (chapter 410). In this section as it now stands, provision is made for the revocation of shedding permits, in the following terms:

"Where such license or authority has been granted, and has been acted upon, it shall not be revoked by said commissioner (of docks) without the consent in writing of the mayor and of the commissioners of the sinking fund, after due hearing of such licensee."

It is not necessary now to consider whether this interpolation into the statute conferred upon the city the right to revoke, without compensation, a permit, not theretofore revocable, and under which valuable rights had been acquired. At all events, it prescribes the only manner in which such permits as are revocable might after the passage of the act be lawfully revoked. No such action was taken in the present case, and therefore, even if the condition attached to the permit of 1877 was valid, and made the permit a revocable one, it was never revoked, and the action of the commissioner in attempting to revoke it

·was ineffectual. The consequence is that, when the city took possession of the pier and the structures thereon, the latter remained lawful structures erected and maintained under a valid and unrevoked permit. They were the property of the respondent, and upon the plainest principles their owner was entitled to compensation for their taking.

The order appealed from must be affirmed, with $10 costs and disbursements. All concur.