In the Matter of the Application of THE CITY OF NEW YORK, Relative to Acquiring Lands for the Improvement of the Water Front on the North River Between West Eighteenth and West Twenty-third Streets.

ERIE RAILROAD COMPANY, Appellant; THE CITY OF NEW YORK et al., Respondents.

1. LANDLORD AND TENANT — CONDEMNATION OF REAL ESTATE — APPORTIONMENT OF DAMAGES.  A landlord and tenant may agree to an apportionment of damages, for property taken in condemnation proceedings, which either of them might claim if he were the owner of the entire estate.

2. SAME — CONDEMNATION OF PART OF LEASED PROPERTY — WHEN LESSEE MAY SURRENDER TO LESSOR, CLAIM FOR DAMAGES FOR LAND TAKEN, AND RESERVE CLAIM FOR INJURIES TO STRUCTURES USED IN CONNECTION THEREWITH.  Where the city of New York has condemned a wharf and bulkhead, on which a railroad company, as lessee of the

owners, maintained certain structures connected by tracks with other structures situated on the opposite side of an intervening street, on land leased from the same owners, all the structures, with the tracks and fixtures, being used together, as one plant, for a passenger and freight station, the lessee may surrender and release to its lessors its leases and all claims which, as tenant, it has against the city for the condemnation of the wharf and bulkhead; but, at the same time and in the same instrument, reserve any claim it has for injury to or destruction of its structures and fixtures resulting from the diminished value thereof caused by the severance of the property condemned by the city.

3. SAME. The fact that the surrenders of the leases were made retroactive in their effect does not change the situation. The injury to the plant was inflicted at the time the city took title to the wharf and bulkhead by the institution of the condemnation proceedings and, therefore, the lessor and lessee were dealing with an accrued claim for damages which the latter could reserve and retain if the former consented thereto.

*Matter of City of New York*, 125 App. Div. 393, reversed.

(Argued October 1, 1908; decided October 13, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 10, 1908, which affirmed an order of Special Term confirming the report of commissioners in condemnation proceedings.

The facts, so far as material, are stated in the opinion.

*F. B. Jennings* and *Allen Wardwell* for appellant. The fact that, subsequent to the commencement of this proceeding and the vesting of title in the city, the lessee relinquished to the owners any claim for the award to the bulkhead proper does not affect its right to recover for depreciation in the value of its fixtures. (*W. E. L., H. & P. Co.* v. *Reed*, 47 Misc. Rep. 406; *King* v. *Mayor, etc.*, 102 N. Y. 175; *Pegram* v. *N. Y. E. R. R. Co.*, 147 N. Y. 135; *W. U. T. Co.* v. *Shepard*, 169 N. Y. 170; *Pappenheim* v. *M. E. R. Co.*, 128 N. Y. 447; *Holloway* v. *Southmayd*, 139 N. Y. 409; *McKenna* v. *B. U. E. R. R. Co.*, 184 N. Y. 396.) Where property condemned is a portion of a greater parcel which is used for one purpose, and the part taken is necessary for the purposes to which the whole parcel has been devoted, the

owner and the lessee are entitled not only to the value of the part actually taken, but also to the diminution in value of the remainder by reason of the severance. The same rule applies to the tenant's interest. (*S. B. Ry. Co.* v. *Kirkover*, 176 N. Y. 301; *Bohm* v. *M. El. Ry. Co.*, 129 N. Y. 576; *Matter of Bd. of Public Improvements*, 99 App. Div. 576; *R., W. & O. R. R. Co.* v. *Gleason*, 42 App. Div. 530; *Matter of N. Y. & B. Bridge*, 18 App. Div. 8; *Matter of City of New York*, 120 App. Div. 859; *Matter of N. Y., W. S. & B. R. Co.* v. *Bell*, 28 Hun, 426.) It is equally well settled that depreciation in the value of fixtures attached to the property taken and also upon the property not taken should be allowed, and if they belong to the tenant the award should go to him. (*Matter of City of New York*, 118 App. Div. 865; *Matter of City of Buffalo*, 17 N. Y. S. R. 371; *Matter of Broadway*, 63 Barb. 572; *Matter of Park Commissioners*, 1 N. Y. Supp. 763; *Matter of Mayor, etc.*, 39 App. Div. 589; *N. Y., W. S. & B. R. R. Co.* v. *Bell*, 28 Hun, 426; 4 Sutherland on Damages, 3127–3129, § 1069; *Price* v. *M. & St. P. R. R. Co.*, 37 Wis. 98; *C., etc., R. Co.* v. *Wolf*, 27 N. E. Rep. 78; *P., etc., R. R. Co.* v. *Getz*, 6 Atl. Rep. 356; *Kersey* v. *R. R. Co.*, 19 Atl. Rep. 553.) The fact that Thirteenth avenue was interposed between the block in question and the bulkhead condemned does not prevent the application of the rule of law before referred to. (*Matter of Mayor, etc.*, 39 App. Div. 589; *W. E. L., H. & P. Co.* v. *Reed*, 47 Misc. Rep. 406; *Kingsland* v. *Mayor, etc.*, 45 Hun, 198; *Matter of N. Y., L. & W. R. R. Co.* v. *Arnot*, 27 Hun, 151.) The fact that in order to use the bulkhead and block of ground leased by the claimant for a railroad yard it was necessary or convenient to obtain permits from the city, *first*, to lay tracks across Thirteenth avenue, and, *second*, to build a transfer or float bridge over the water in front of the bulkhead, in no wise affects the rights of the claimant to recover for the diminution in value of its fixtures by reason of this condemnation. (*Blaney* v. *City of Salem*, 35 N. E. Rep. 858; *Cochrane* v. *Comm.*,

56 N. E. Rep. 610 ; *Matter of Gilroy,* 85 Hun, 424 ; *Matter of City of New York,* 120 App. Div. 849 ; *Boom Co.* v. *Patterson,* 98 U. S. 403 ; *Matter of N. Y., L. & W. Ry. Co.,* 49 Hun, 539 ; *Matter of Daly,* 72 App. Div. 394 ; *Matter of City of New York,* 95 App. Div. 501 ; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 569.)

*Francis K. Pendleton, Corporation Counsel* (*Theodore Connoly* and *Charles D. Olendorf* of counsel), for respondent. The commissioners were correct in refusing to allow any damages for the value of the ferry houses, racks and structures. (*Powers* v. *Village of Athens,* 99 N. Y. 592 ; *Mayor* v. *Starin,* 106 N. Y. 1 ; *Mayor* v. *S. I. F. Co.,* 8 J. & S. 232 ; 64 N. Y. 622 ; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 569 ; *Langdon* v. *Mayor, etc.,* 93 N. Y. 129 ; *Deshong* v. *City of New York,* 176 N. Y. 475.) The effect of the agreements between the property owners and the railroad company terminating their leases of the block of land and of the bulkhead occupied by that company, prevents a recovery in this proceeding for any alleged fixtures of the railroad company on the block of land mentioned. (*Pappenheim* v. *M. El. R. Co.,* 128 N. Y. 436 ; *Kernochan* v. *N. Y. El. R. R. Co.,* 128 N. Y. 559 ; *Pegram* v. *N. Y. El. R. Co.,* 147 N. Y. 135 ; *Foote* v. *M. El. R. Co.,* 147 N. Y. 367 ; *Shepard* v. *M. R. Co.,* 169 N. Y. 160 ; *W. U. T. Co.* v. *Shepard,* 169 N. Y. 170 ; *McKenna* v. *B. U. El. R. R. Co.,* 184 N. Y. 391.) No recovery can be had herein for damage to the " fixtures " in the yard between Twenty-second and Twenty-third streets and Eleventh and Thirteenth avenues, for the reason that the block of land was separated from the property taken by a public street. (*Matter of N. Y. C. & H. R. R. R. Co.,* 6 Hun, 149 ; *Kingsland* v. *Mayor, etc.,* 110 N. Y. 569 ; *Mayor, etc.,* v. *Law,* 125 N. Y. 380.)

WERNER, J. This is a condemnation proceeding instituted by the city of New York for the purpose of acquiring certain lands and bulkhead rights on the easterly shore of the North

river between Twenty-second street and Twenty-third street, in accordance with a general plan for the permanent improvement of the water front, pursuant to various statutes which need not now be enumerated. The petition designates the property to be condemned as consisting of eleven separate parcels, in only one of which does the appellant claim any interest, and that is parcel number one which is described as " All the rights of wharfage, incorporeal hereditaments, terms, easements, emoluments, privileges or other appurtenances of any kind whatsoever appurtenant to the bulkhead along the westerly side of Thirteenth Avenue, extending from the southerly side of West Twenty-third street to the northerly side of West Twenty-second street."

Attached to this bulkhead, on the water side of the bulkhead line, were a platform and float bridge maintained by the appellant, the Erie Railroad Company, under a revocable license from the city. To the north of the float bridge, and also attached to the exterior side of the bulkhead, were the passenger station, baggage room, restaurant, etc., of the railroad company, located partly upon land under water belonging to the city of New York, and partly upon the submerged lands which formed the continuation of West Twenty-third street. The railroad company was also the lessee from the city of the right to operate a ferry from the foot of West Twenty-third street across the North river to the foot of Pavonia avenue in Jersey City. This lease was dated December 21, 1897, and its duration was for five years, subject to the right of the city to enter upon and take possession of the structures and improvements erected and maintained upon the leased property by the railroad company, upon service of a three months' notice, whenever the city, through its department of docks, should decide to appropriate the *locus in quo* for water improvements ; and in the event of such appropriation the railroad company was to be entitled to no compensation for the taking or destruction of such structures or improvements. The railroad company, under a revocable permit from the city, had also laid and maintained across Thirteenth avenue three rail-

road tracks, by means of which its structures on the water side of Thirteenth avenue were connected with its freight yard on the east side of that avenue. This freight yard was upon lands leased to the railroad company by the same lessors who owned the bulkhead rights and water privileges which have been condemned herein. It was equipped with sheds, platforms, tracks, drives and other things which were essential or convenient to its use as a component part of the whole plant, consisting of the several structures and improvements which have been separately described or referred to.

On the 29th day of August, 1904, the railroad company surrendered to its lessors, Moore and others, all rights under said leases, and all claims or demands against the city of New York to any portion of the award for the value of the wharf cr bulkhead rights condemned herein, and all other rights, claims or demands of every nature, except such claims as the railroad company had by reason of injury to or destruction of its fixtures or property other than the bulkhead. This surrender by the railroad company to its lessors was to take effect as of the 17th of October, 1902, that being the day upon which title to the bulkhead rights passed to the city pursuant to the provisions of section 823a of the Greater New York charter. No question is presented upon this appeal as between the city and the owners of the bulkhead rights, but the railroad company complains that its reserved rights have been ignored throughout the proceeding. It contends that notwithstanding its surrender to its lessors of the leases under which it held the greater portion of the lands and premises above described, and the release of its share of the damages to which, but for the surrender of its leases, it might have been entitled by reason of the condemnation of the bulkhead rights, it still retained its claim for any incidental damages to its physical equipment which was rendered useless or less valuable by the city's appropriation of the bulkhead rights. Counsel for the city meets this contention with the suggestion that since the surrender by the railroad company was made effective as of the day when the city acquired its title to the bulkhead rights,

the railroad company retained no interest in the premises for which it could lawfully demand compensation. In support of this contention he cites a number of the so-called elevated railroad cases in which it has been held that easements are inseparable from the dominant estate, and that a claim for damages for the future impairment or destruction of easements cannot be reserved in favor of a grantor who has parted with his interest in the dominant estate. The commissioners held that the loss to the railroad company of its structures and fixtures, consequent upon their severance from the bulkhead rights which were condemned, was *damnum absque injuria*, and reported against the railroad company's claim. The report of the commissioners was in all things confirmed at Special Term. The learned Appellate Division reached the same conclusion, but by a different process of reasoning. It held that as to the structures of the railroad company on the west side of Thirteenth avenue which were attached or adjacent to the bulkhead the railroad company could not recover (1) because as to so much of the structures as had been erected under a revocable license from the city there could be no legal damage, and (2) as to such parts of the structures as had been erected upon the land of the city pursuant to the lease granting to the railroad company a right to operate a ferry there was an express covenant that the city might, upon a three months' notice, terminate the lease and take possession without liability for destruction of structures erected by the railroad company, and (3) as to such parts of the railroad company's structures attached to the bulkhead owned by the lessors, Moore and others, the structures must be regarded as merely temporary and removable at the will of the city whenever the proper authorities should decide to appropriate the bulkhead rights of private owners for the improvement of the water front, or if the structures were not temporary they were illegal because in contravention of the provisions of section 712 of the Consolidation Act which was in force when the structures were erected. With these conclusions of the court below we do

not disagree, and further discussion of them is, therefore, unnecessary.

But the learned Appellate Division also entertained the view that but for the surrender of the leases between the railroad company and its lessors the former would have been entitled to damages for the injury to or destruction of its structures and fixtures in the freight yard located on the easterly side of Thirteenth avenue. This is shown by the following excerpt from its opinion: "It must be conceded that the appellant did use the bulkhead and the freight yard as one plant, neither portion of which would have been of substantial value without the other, and this interdependence of each part upon the other was not affected by the circumstance that the two parcels were separated by Thirteenth avenue, so long as the city's permit to maintain connecting tracks remained unrevoked, as it did up to the time that the city acquired title to the bulkhead. If, therefore, the appellant had owned both the bulkhead and the freight yard, or had continued to hold them both as lessee, a strong case would have been presented for the application of the well-settled rule that where the land taken is a portion of a greater tract which is used for one purpose, and the part taken and the buildings upon it are necessary for the purposes to which the whole tract has been devoted, the owner is entitled not only to the value of the land actually taken, but to the difference between the value of the plant as it was before the land was taken and its value after the taking." This is an accurate statement of the general rule set forth in a long line of cases of which *South Buffalo Ry. Co.* v. *Kirkover* (176 N. Y. 301) and *Bohm* v. *Metropolitan El. Ry. Co.* (129 N. Y. 576) are fair illustrations, and it only remains to pass upon the question whether the Appellate Division correctly concluded that it does not apply to the case at bar " because the appellant stands in the position of neither owner nor lessee, and concededly has no claim for damages for the property actually taken."

It is true that the appellant railroad company surrendered

to its lessors all claim which, as tenant, it could have made against the city for the condemnation of the bulkhead rights, but it is equally true that it expressly reserved all claims for injury to or destruction of its structures and fixtures. When the agreements to surrender the leases were made, the damage, if any, to these structures and fixtures had already been inflicted, at least in contemplation of law, for the title to the bulkhead condemned vested in the city when the proceeding was instituted. It is also true that the surrenders of the leases were made retroactive in their effect, but that did not change the situation as to the rights which the railroad company reserved against the city. As to those rights, lessor and lessee were dealing with an accrued claim for damages which the latter could reserve and retain if the former consented thereto. It was merely an apportionment of an item of damage which would have constituted a proper part of the total award if the appellant's entire interest had been released to the owners, and we do not see how it is any less a proper constituent of the award because it was reserved to the tenant. The case of *McKenna* v. *Brooklyn Union El. R. R. Co.* (184 N. Y. 391), relied upon for the Appellate Division's conclusion that the railroad company " by the surrender of its leasehold estate necessarily parted with every claim of damage, not only to the leasehold estate itself, but to everything appurtenant to that estate, notwithstanding any attempted reservation," is not at all in conflict with our views of this case. That case simply reiterated the rule set forth in *Western Union Telegraph Co.* v. *Shepard* (169 N. Y. 170), to the effect that easements are inseparable from the principal estate, and that suits for damages for the invasion or impairment of easements must be brought in the name of the owner of the dominant estate. But the *McKenna* case also followed that case in holding that a grantee who takes a conveyance containing a reservation to the grantor, of the right to damages for past injuries to easements, becomes a resultant trustee for the grantor as to all moneys recovered or collected for the invasion or destruction of such easements. All the

other elevated railroad cases cited by counsel for the city (*Pegram* v. *N. Y. El. R. R. Co.*, 147 N. Y. 135 ; *Kernochan* v. *N. Y. El. R. R. Co.*, 128 N. Y. 559 ; *Pappenheim* v. *Metr. El. Ry. Co.*, 128 N. Y. 436, 453 ; *Foote* v. *M. E. Ry. Co.*, 147 N. Y. 367, 374, and *Shepard* v. *Manhattan Ry. Co.*, 169 N. Y. 160, 164) are inapplicable here because they simply decide that a grantor of premises abutting upon an elevated railroad cannot reserve the right to damages for future invasions of easements and that no one but the owner of the dominant estate can maintain an action to recover such damages. The question in the case at bar is an entirely different one. It is simply whether landlord and tenant can agree to an apportionment of damages which either of them might lawfully claim if he were the owner of the entire estate. Had the fixtures and structures in the freight yard belonged to the lessors they would concededly have been entitled to such damages as resulted from the diminished value of these appurtenances by reason of their severance from the property condemned. Had the lessee retained its interest in the lease the same elements would enter into any computation of the loss entailed upon their leasehold estate by the severance of the bulkhead rights from the structures and fixtures in the freight yard. Why should the rule of damages be any different in a case where the lessee and its lessors agree to divide an award which must have been to one or the other but for their agreement ? The lessee's rights in the freight yard structures and fixtures were not affected by the surrender of the leases but by the act of the city in appropriating the bulkhead rights in connection with which the structures and fixtures referred to were used. We are not concerned with questions which might have arisen as between lessor and lessee as to the ownership of these structures and fixtures upon a termination of the lease without any agreement upon the subject, for here then is an express agreement between them that the title to these things shall remain in the lessee. We think, therefore, that upon this branch of the proceeding the orders of the Appellate Division and the Special Term must be reversed, and the pro-

ceedings remitted to the latter tribunal for the purpose of directing the commissioners to reapportion the damages awarded in accordance with the foregoing views. Costs of this appeal are awarded to the appellant.

Cullen, Ch. J., Edward T. Bartlett, Hiscock and Chase, JJ., concur; Vann, J., not sitting; Haight, J., absent.

Orders reversed, etc.