In the Matter of the Application of the CITY OF NEW YORK, Appellant and Respondent, Relative to Acquiring Wharf Rights Appurtenant to Pier Old No. 49, East River, and Appurtenant to Wharf Properties on or Near the Southerly Line of South Street in the Borough of Manhattan.

MUHLENBERG COAL COMPANY, Appellant and Respondent; FREDERICK W. ARMSTRONG et al., Respondents.

**Eminent domain — New York (city of) — proceeding by city to acquire piers and dock property — rights of owners and lessees under revocable licenses from city — when entitled to damages for loss of business and destruction of buildings erected on piers.**

1. The shedding permits issued by the department of docks of the city of New York by virtue of the provisions of chapter 249 of the Laws of 1875 are revocable, especially when containing the condition that they may be revoked in the pleasure of the board. (*Kingsland v. Mayor, etc., of N. Y.*, 110 N. Y. 569, followed.)

2. Such a license, although unrevoked, should have been valued by commissioners to assess the damages for the taking of such dock property by the city of New York as a shedded pier under a revocable license, one that could be revoked in accordance with these provisions of the charter, and not valued as a shedded pier under a irrevocable license. The claimant should also be allowed the structural value of a shed on the premises unless this be included in the pier value to be ascertained.

· 3. A corporation whose bulkhead privileges were condemned had carried on a coal business thereon for over twenty years, using it in connection with property across a street seventy feet wide, which was the only thing separating its upland property from the water,

as one going business or enterprise. By the taking of the bulkhead by the city under condemnation proceedings, the business of the company has been destroyed and its property as a going plant greatly decreased in value. *Held*, that the fact that the bulkhead is separated from the other property by the street does not prevent an allowance to the claimant for the loss sustained to the plant as a whole. (*Matter of City of New York* [*Erie Railroad*], 193 N. Y. 117, followed.)

*Matter of City of New York* (*Pier Old No. 49*), 185 App. Div. 539, modified.

(Argued May 21, 1919; decided July 15, 1919.)

APPEAL by the City of New York from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 10, 1919, which reversed an order of Special Term, denying a motion to confirm the report of commissioners of estimate in the above-entitled proceeding and modified and as modified confirmed said report. Appeal by the Muhlenberg Coal Company from so much of said Appellate Division order as modified the report of commissioners of estimate by striking out an award to it for damages to its plant as a whole.

The facts, so far as material, are stated in the opinion.

*William P. Burr*, Corporation Counsel (*Charles J. Nehrbas* and *Charles D. Olendorf* of counsel), for City of New York, appellant and respondent. The commissioners erred in valuing the pier upon the theory that the license or permit under which the pier was shedded was irrevocable. (*Matter of City of New York*, 117 App. Div. 553; *Kingsland* v. *Mayor*, 45 Hun, 198; *Langdon* v. *Mayor*, 133 N. Y. 628; *Matter of Pier Old 11, East River*, 124 App. Div. 465; 192 N. Y. 539; *Matter of City of New York* [*Pier Old No. 15, East River*], 185 N. Y. 607; *Matter of City of New York* [*Piers Old Nos. 16 & 17, East River*], 138 App. Div. 186; 199 N. Y. 570; *Williams* v. *Mayor, etc.*, 105 N. Y. 419; *Coverdale* v. *Edwards*, 155 Ind. 374; *McCabe* v. *City of New York*, 213 N. Y. 468; *Matter of City of New York* [*Ely Avenue*],

217 N. Y. 45; *Matter of Pub. Serv. Comm.*, 217 N. Y. 61.) Assuming that the shed license inured to the benefit of the claimants, and that it was not in fact revoked, it cannot be considered as an element of value in determining the compensation to be made for the taking of the pier. (*Matter of Piers 19 & 20, East River*, 117 App. Div. 553; *Kingsland* v. *Mayor, etc.*, 110 N. Y. 569.) The commissioners erred in making an award to the Muhlenberg Coal Company for " damages to plant as a whole." (*City of New York* v. *Rice*, 198 N. Y. 124; *Ackerman* v. *True*, 175 N. Y. 353; *Cohen* v. *Mayor, etc.*, 113 N. Y. 532; *Bates* v. *Holbrook*, 171 N. Y. 460; *People ex rel. Pumpyansky* v. *Keating*, 168 N. Y. 390; *Acme Realty Co.* v. *Schinasi*, 215 N. Y. 295.)

*Charles A. Decker* for Muhlenberg Coal Company, appellant and respondent. The use made by claimant of the bulkhead part of its plant was proper, and thereby in conjunction with its upland property, its business and plant were established and maintained, until destroyed by the taking of the bulkhead. (L. 1913, ch. 521; *Marshall* v. *Guion*, 11 N. Y. 461; *Taylor* v. *Atlantic Mutual Ins. Co.*, 37 N. Y. 275; *Langdon* v. *Mayor*, 93 N. Y. 150.) Just, *i. e.*, complete, compensation should be awarded to the claimant for all damage resulting from the taking. (*Matter of City of New York [Erie Railroad Co.]*, 193 N. Y. 117; *Jackson* v. *State*, 213 N. Y. 34; *County of Erie* v. *Friedenberg*, 221 N. Y. 389; *Boyd* v. *United States*, 116 U. S. 616; *S. B. Ry. Co.* v. *Kirkover*, 176 N. Y. 301; Mills on Eminent Domain [2d ed.], § 168; *Omaha* v. *Omaha Water Co.*, 218 U. S. 180; *Bohm* v. *M. E. Ry. Co.*, 129 N. Y. 576; *Reisert* v. *City of New York*, 174 N. Y. 196; *Bagley* v. *Smith*, 10 N. Y. 489, 498; *Schill* v. *Brockhaus*, 80 N. Y. 614.)

*William H. Harris, George S. Mittendorf* and *Charles C. Keeler* for respondents. These appellants had good

title to all of the property for which the awards were made. (*Bedlow* v. *N. Y. F. D. D. Co.*, 112 N. Y. 263; *Bedlow* v. *Stillwell*, 158 N. Y. 292; *Reformed P. D. Church* v. *Madison Avenue Building Company*, 214 N. Y. 268; *Ebling* v. *Dreyer*, 149 N. Y. 460.) The commissioners adopted no erroneous principle of law or rule of damages in arriving at the amount of the awards, and their conclusions as to value are abundantly sustained by the evidence. (*Perkins* v. *State of New York*, 113 N. Y. 660; *Matter of Furman Street*, 17 Wend. 649; *Boom Co.* v. *Patterson*, 98 U. S. 403; *Matter of N. Y., W. S. & B. R. R. Co.*, 35 Hun, 635; Cooley on Const. Lim. 708, § 568; *Pittsburgh, etc., Ry.* v. *Vance*, 116 Penn. St. 325; Lewis on Em. Dom. § 478; *Matter of William & Anthony Streets*, 1 Wend. 694; *Langdon* v. *Mayor, etc.*, 133 N. Y. 634; *Witmark* v. *N. Y. El. R. R. Co.*, 149 N. Y. 393; *Matter of Mayor, etc., of New York*, 74 App. Div. 346; *Eastman* v. *Mayor, etc.*, 152 N. Y. 474.)

CRANE, J. This proceeding was instituted on behalf of the city of New York by the commissioner of docks to acquire the wharfage rights not owned by the city appurtenant to pier old No. 49, East river, together with the wharfage rights appurtenant to certain bulkheads. on the southerly side of South street adjacent to and in the vicinity of said pier. On the map attached to the petition parcel A was shown to consist of a bulkhead 72.18 feet in length west of Clinton street claimed to be owned by the Muhlenberg Coal Company. Parcel B consists of a bulkhead 29.3 feet in length adjoining pier old 49 on the west, and parcel C is a bulkhead 31.48 feet in length adjoining the pier on the east, both owned by Frederick W. Armstrong and others. Parcel D is a pier. It is described in the petition as 35.1 feet wide and about 325 feet long having an area of 11,440 square feet. This pier was also owned by Frederick W. Armstrong and others. The land under the water over which the pier

was constructed and in front of the bulkheads was, however, owned by the city of New York.

The commissioners appointed by the Supreme Court to assess the damages for the taking of this property awarded for the parcels B, C and D, which were used in conjunction, $250,000. They awarded to the Muhlenberg Coal Company for its bulkhead rights, parcel A, $21,654 and for damage to its plant as a whole $20,000.

The Special Term refused to confirm the report and referred the matter back to new commissioners. This order was reversed by the Appellate Division and the awards were reinstated with the exception of the allowance of $20,000 to the Muhlenberg Coal Company for damages to the plant as a whole. The disallowance of this amount was affirmed.

The appeal to this court brings up for review two questions: *First*, the valuation of the pier as a shedded pier under an irrevocable license, and *second*, the disallowance of the damages sustained by the Muhlenberg Coal Company through the depreciation of its entire plant by the taking of its wharfage rights and privileges.

On this pier there had been erected since about 1879 a wooden shed covering the greater part of its surface. Its value was about $1,000. A permit for its erection was granted by the board of docks of the city of New York, and it is conceded that if the permit were irrevocable the value to the claimants of the pier as a shedded pier under an irrevocable permit was of much greater value than an unshedded pier or one shedded under a revocable permit. As a shedded pier under an irrevocable license the value was placed by one expert at $350,000. As an unshedded pier, or as a shedded pier under a revocable license, another expert placed the value at $96,590. The commissioners wrote an extensive and able opinion in which they said after reviewing the authorities:

" For these reasons it seems to us clear that the permit to shed was irrevocable and belonged to the claimants

and, therefore, that they are entitled to be compensated upon the basis of the existence of the pier as a shedded pier at the time title was taken by the city."

The Appellate Division stated the matter in these words:

" The only real question is whether the award should have been made on the theory that the permit was revocable or on the theory that it was irrevocable. That is a question that perhaps has not been finally authoritatively decided with respect to such a permit as this which contained no condition such as that the holder in the event of condemnation should claim no award on account of the permit but merely the recital that it was subject to the pleasure of the commissioner." (185 App. Div. 539, 548.)

Considering that the point had not been raised by proper objection, the city presenting its evidence solely upon the theory of an unshedded pier, the Appellate Division passed this question and affirmed the award of the commissioners. We think this question was presented and that we must pass upon it.

The commissioners valued the pier as one existing under an irrevocable shedding license. The city offered evidence of value as an unshedded pier. It went further. Martin McHale, its expert, testified that the value of the pier under a license revocable at the pleasure of the board, but not revoked at the time of this proceeding, was worth no more than an unshedded pier, to wit, $96,590. An objection was made by the city to the valuation of the pier by the claimant as a shedded pier in these words:

" Mr. Olendorf: Then I object to any proof as to the value of the pier as a shedded pier on the ground that the license for the shedding of that pier was revocable in its nature and was revoked by the Commissioner of Docks, the Commissioners of the Sinking Fund and the Mayor prior to the vesting of title in this proceeding,

in the manner permitted and described by Section 844 of the Charter."

The fact that the city also claimed that the permit had been revoked did not weaken or nullify its objection to the treatment of the pier as a shedded pier under a license which could not be revoked.

This much of the record shows that this court must pass upon the right of the commissioners to value this pier as shedded under an irrevocable license.

Piers with or without shedding licenses have been the subject of other litigations reported in the books and the laws affecting them and the reasons for the increased value with shedding privileges have been frequently and fully stated. No more is required here than to refer to these cases and the statutes in so far as they may make clear our position.

Prior to chapter 249 of the Laws of 1875, known as the Shedding Act, it was unlawful to erect structures of any kind upon piers in the waters about the city of New York. (*People* v. *Mallory*, 46 How. Pr. 281; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 150; *Kingsland* v. *Mayor, etc., of N. Y.*, 45 Hun, 198; 110 N. Y. 569.)

That law provided:

" Section 1. Whenever any person, company or corporation, engaged in the business of steam transportation, shall be the owner or lessee of any pier or bulkhead in the city of New York, and shall use and employ the same for the purpose of regularly receiving and discharging cargo thereat, it shall be lawful for such owner or for such lessee, with the consent of the lessor, to erect and maintain, upon such pier or bulkhead, sheds for the protection of property so received or discharged; provided, they shall have obtained from the department of docks, in said city, a license or authority to erect or maintain the same, and subject to the conditions and restrictions contained in such license or authority. All sheds or structures heretofore erected or maintained upon any wharf or

pier in the city of New York, under any license or permit granted by the department of docks in said city, are hereby declared to be lawful structures subject to the terms and conditions of the license or permit authorizing the same. Such sheds shall be constructed subject to the regulations and under the authority of the superintendent of buildings and the department of docks."

"Section 2. Any such owner or lessee of a pier, or of a pier and bulkhead, or of a part thereof in respect to which the department of docks shall have granted the license or authority specified in section one of this act, shall be entitled to the use of the premises so owned or leased by them, and no vessel shall be placed in any berth on such pier or bulkhead, or part thereof, without the consent of such owner or lessee, during the continuance of such license."

The lessee of pier old No. 49 East river was the Central Vermont Railroad Company, which pursuant to this act obtained a shedding permit or license on December 24th, 1879, by the following resolution:

"Resolved, That permission be and hereby is granted to the Central Vermont R. R. and steamer line, lessee of Pier 49, East River, to erect and maintain, during the pleasure of this board, a shed to cover said pier, for the protection of property received and discharged thereat by steam transportation; said shed to be constructed subject to the regulations of the Superintendent of Buildings, as required by Chapter 249, Laws of 1875, and in accordance with plans to be first submitted to and approved by the engineer in chief of this department, and all the work to be done under the supervision of that officer."

The increase in value of a shedded pier was due to its exclusive use by a lessee or owner whereas an unshedded pier was open to the public. (*Kingsland* v. *Mayor, etc., of New York, supra.*)

Prior to this Shedding Act the department of docks

had been created by chapter 574 of the Laws of 1871. It was given exclusive charge and control of all wharf and pier property. The board was directed to prepare plans for the water front and to proceed to lay out and construct wharves and piers according to them. The plans were to be filed in the office of the board, open to public inspection. Notice of their adoption was also to be given by advertisement. In April of 1871 such plans were adopted and filed for the location in question. They were offered in evidence in this proceeding.

It is fair to assume that when the license was given to the Vermont Central Railroad Company, as above stated, the city authorities had in mind the plans for this shore front improvement as adopted and filed. This explains why the license was limited to the pleasure of the board.

This court in the *Kingsland Case* (*supra*) said:

" In 1875 an act was passed, commonly known as ' the shedding act,' which authorized the department of docks to grant permits for the maintenance and construction of sheds upon the piers or bulkheads, but these permissions were revocable in their nature, without consideration, and expressly subject to the rules and regulations of the department of docks to whose discretion the matter was confided. * * * The license of the dock department to plaintiff's lessee was after the passage of the act of 1871, and by its very terms was operative only during the pleasure of the city. Those who received it knew when they received it that it conferred no fixed property right, but merely a privilege which the city might withdraw at any moment, and that the plan of 1871 contemplated and would compel that withdrawal." (pp. 583, 580. See, also, opinion of DANIELS, J., in this same case reported in 45 Hun, 198.)

The reading of this act of 1875, the terms of the permit issued to the Vermont Central Railroad Company, this expression of our court in 1888 would seem to make it very clear that in view of the proposed and impending

changes along the city's water front any shedding permits were but temporary and could be revoked when the authorities determined upon the execution of the plans. We find nothing in the law or in the situation which suggests that they should or would be irrevocable. The parties obtaining the permits for their own benefit and profit as well as the improvement of shipping conditions could take them or leave them, but if accepted, it would be upon the terms and conditions imposed. No reason can be suggested why the city should be obliged to pay for the increased value of a pier due to its own act in issuing a shedding privilege. If the permits cannot be revoked this increase is not simply the value of the shed, but a much greater amount due to the license or permit to have the shed. The value is added by the act of the city. It is added when the city officials know that in the course of time the property must be purchased or condemned. When the city condemns, it is said, it must pay for this increased value which it voluntarily and without consideration has given to the owner. But why should it thus unnecessarily give away value, or, in other words, the city's money?

Reason as well as duty dictates that the statements of the *Kingsland* case should be followed, and that these permits and licenses are but temporary and revocable when a contemplated improvement is begun.

The commissioners and the court below have been of the opinion that this court has held in subsequent cases that the permit once granted was irrevocable even when containing a condition that it was granted only during the pleasure of the board of docks. The language in some of the Appellate Division decisions has justified this conclusion, but an analysis of the matter actually decided leads us to the conclusion that the views expressed in the *Kingsland* case have not been overruled, and that the nature of these permits has not been changed. In *Matter of City of New York, Pier No. 15* (95 App. Div.

501) the permit to erect a pier shed issued by the dock
department in 1887 pursuant to the Laws of 1875, chapter
249, section 3, contained no conditions or limitations
whatever.   There was no power reserved to revoke it.
It is true that in the opinion these words were used:

"There being no authority given to the dock depart-
ment to revoke such license or authority when once
given, when that authority was given the structure
became by the force of the legislative enactment a lawful
structure."   (p. 505.)

Further in the opinion, however, the judge writing
calls particular attention to the exact facts of the case
by saying:

"There was nothing in the resolution that reserved
the right of the city to revoke the authority once given,
and that authority having been given the right to erect
and maintain that shed vested, by virtue of the statute,
in the owners of the pier."   (p. 506.)

When the case came to this court (185 N. Y. 607,
affirming 113 App. Div. 903) the opinion of the Appellate
Division was not approved although the order was
affirmed.   This court said:

"While we do not assent to the doctrine that the
right of the pier owners to an exclusive use of the pier
as a shedded pier, and to be relieved of the burden of
having vessels put in at the wharf was beyond legislative
repeal or modification, still, as at the time this property
was acquired by the city no such repeal had been made,
the value of the property was to be estimated under
the existing conditions of the law.   While the report
states that the award was made upon the theory of the
right being in perpetuity, still the entire record discloses
that it was made in accordance with the true rights of
the parties."

In *Matter of City of New York* (*Piers Old Nos. 19
& 20*) (117 App. Div. 553) the permit was construed

9

by the court to be of the same character as that passed upon in *Matter of City of New York* (*Pier No. 15*) that is, a permit without restriction or condition or power of revocation reserved.  The opinion, however, distinctly states that if the resolution or permit of the dock department had contained a limiting clause the decision would have been different, as the dock department could attach restrictions and conditions to sheds erected for the first time after 1875 and could make them revocable.

It will be noted at this point that the shed in question on pier old No. 49 was erected in 1879.

In *Matter of City of New York* (*Pier Old No. 11, East River*) (124 App. Div. 465) permission was granted to the owners of pier 11, East river, to erect a shed on said pier upon the owner filing a written agreement that in the event that the commissioner of docks should decide that said pier was needed for the improvement of the water front that then, and in such case, no additional item of value was to be claimed or allowed by reason of the erection of the shed.  The commissioners, in assessing value, considered this a revocable license and awarded damages for an unshedded pier only.  This rule was affirmed by the Appellate Division and by this court (192 N. Y. 539).

The opinion of the Appellate Division states:

" We are of opinion that the owners were not entitled to have the pier valued as a shedded pier.  The decision of this question depends upon the validity of and the construction to be placed upon the license or permit for the erection of the shed.  *  *  *  Accordingly, instead of denying the application, he [the commissioner of docks] granted it upon conditions which would enable the owners and lessee to have the benefit of the use of the pier as a shedded pier until such time as he or his successor in office should institute proceedings to acquire the property, but at the same time protecting the city against an increased valuation based upon the fact that

the license or permit had been granted, and he also incorporated a provision manifestly designed to relieve the city, when it should become necessary to acquire this property, from paying any added value on account of the shed itself as a structure or building. It seems quite clear that the owners and lessee are not in a position now to question the authority of the commissioner of docks to exact these conditions. Although the question is not now presented for decision, it may be observed that the view has been expressed in some cases, if indeed the point has not been decided, that the granting or withholding of such permit or license rests in the sound discretion of the commissioner, and that the property owner or tenant is not entitled thereto as matter of right." (pp. 470, 472.)

This case of *Pier Old No. 11, East River*, was distinguished in *Matter of City of New York (Piers Old Nos. 16 & 17)* (138 App. Div. 186) as being based upon an agreement. It was there stated that a permit given upon condition that the owner file a consent not to claim additional value for the shedded pier when taken in condemnation was different from a permit containing a clause making it revocable in the pleasure of the board. We do not appreciate the distinction. The filed statement that the permit is accepted upon such conditions is of no more force than the acquiescence or implication arising from the acceptance of the permit without objection containing such restrictions. An act may be as expressive as a word. If the dock department had no authority to issue a revocable license it likewise had no authority to compel the owner to consent in writing that it should be revocable. Official authority proceeds from the legislature and not from the consent or acquiescence of individuals.

While the order in *Piers Old Nos. 16 & 17* was affirmed by this court (199 N. Y. 570) it by no means follows that all that was said in the opinion of the Appellate

Division was likewise adopted. The award in that case was not for pier privileges but for shed property physically taken by the city. James E. Ward & Co., the lessee, was awarded $6,737.27 for an iron shed and $4,817.60 for a wooden shed. The report of the commissioners so reads. We do not, therefore, consider this case as binding this court to the proposition that a permit, by its terms and conditions made revocable, is beyond the power of the authorities to revoke.

These cases, we must concede, have not left the law as clear and precise as one might wish, but confining them to the facts we find the rule still to be as stated in the *Kingsland* case, that the shedding permits issued by the department of docks are revocable, especially when containing the condition that they may be revoked in the pleasure of the board.

We do agree with the courts below, that the permit in this case had not been revoked. Section 844 of the Greater New York charter (Laws of 1897, chapter 378, re-enacted by chapter 466 of the Laws of 1901) contained express legislative authority for the revocation of shed licenses. It provides:

" But when such license or authority has been granted and has been acted upon, it shall not be revoked by said commissioner without the consent in writing of the mayor and of the commissioners of the sinking fund, after due hearing of such licensee."

These provisions of the charter applied to the license in question. While the necessary consents were given the notice of a hearing was not such as the law prescribed or intended. The city knew that the Vermont Central Railroad Company had ceased for many years to be lessee of this pier and that the New York, New Haven and Hartford Railroad Company was in possession. They gave notice neither to the owners or to the lessee in possession and the attempted notice to the Vermont Central Railroad Company was futile.

Considering, however, the license as unrevoked the pier should have been valued by the commissioners as a shedded pier under a revocable license, one that could be revoked in accordance with these provisions of the charter.   It should not have been valued as a shedded pier under an irrevocable license.   That there is or may be a difference in value is indicated by the testimony above referred to.   (*First Construction Co.* v. *State of New York,* 221 N. Y. 295.)

As the city has apparently taken the shed and leased it to other parties the claimant should also be allowed its value, the structural value, unless this be included in the pier value to be ascertained.

We will now consider that part of the award which gave the Muhlenberg Coal Company $20,000 damages for the injury to its plant.   The commission found that this sum represented the difference between the value of the plant as it was before the bulkhead was taken and its value after it was taken.   Its authority for this award was stated to be *Matter of City of New York (Erie Railroad)* (193 N. Y. 117).   The proceeding there was for the condemnation of all rights of wharfage along the westerly side of Thirteenth avenue extending from West Twenty-third street to West Twenty-second street. Attached to this bulkhead was a platform and float bridge maintained by the Erie Railroad Company under a revocable license from the city.   The railroad company also under a revocable permit had laid and maintained across Thirteenth avenue three railroad tracks by means of which its structures on the water side of Thirteenth avenue were connected with its freight yard on the east side of Thirteenth avenue.   This freight yard was equipped with sheds, platforms, tracks and other things which were essential to its use as a component part of the whole plant consisting of several structures and improvements.   The commissioners held that the loss to the railroad company of its structures and fixtures

consequent upon their severance from the bulkhead rights which were condemned, was *damnum absque injuria* and reported against the railroad company's claim. This court reversed this finding and remitted the proceeding to the commissioners to assess the damages to the physical equipment of the railroad company which was rendered useless or less valuable by the city's appropriation of the bulkhead rights.

We think the situation in this case is quite similar and requires the application of the same rule.

The Muhlenberg Coal Company, for over twenty-two years, had carried on the business of buying and selling coal at retail at 281, 282 and 283 South street across the way and opposite to the bulkhead condemned. At this point South street was seventy feet wide and was the only thing separating the company's upland property from the water. On the premises was a reinforced concrete building covering the whole plot. This property, together with the machinery and bulkhead rights and privileges, was used as one going business or enterprise. Situated on the bulkhead was a steam shovel. Boats were pulled up alongside of the bulkheads where the steam shovel took the coal from the bulkhead to a hopper which was a part of the unloading apparatus. Carts were driven under the unloading apparatus, loaded and transported across the street where the coal was elevated to the pockets by means of an endless chain conveyer. These coal pockets were fifty feet in height, forty feet in width, sixty feet in depth, built of reinforced concrete with three twelve-foot driveways through underneath, and eighteen-foot driveway on either side and held about 2,300 tons of coal. The pockets together with the eighteen-foot driveways on each side covered the premises with the exception of the office building located in front fourteen feet in depth and three stories high.

The structural value of the coal pockets and machinery was about $32,000. From October 1st to April 15th

in every year the coal company had five coal barges continually unloading at the bulkhead and from April 15th to October 1st one or two barges. The business was what is known as a "water front coal yard," much more valuable than an inland coal yard. The plant was located in a very populous neighborhood and its annual net profit for seven years immediately preceding the taking of its bulkhead was $3,481.02 on average sales of 43,403 tons a year. The city, by this proceeding, has taken the company's bulkhead rights and leased 55.81 feet thereof to the New York, New Haven and Hartford Railroad Company in connection with the shedded pier and other property. After such taking the coal company was obliged to draw its coal from pier No. 36 East river, about 450 feet from its pockets, which it cannot now do at a profit. Its business has been destroyed and its property as a going coal plant greatly decreased in value. There seems to be little question as to the amount of damage sustained by the Muhlenberg Coal Company or as to the reasonableness of the award made by the commissioners. The determining point below was that the bulkhead rights being separated from the other property by a seventy-foot street, damages could not be allowed for a loss sustained to the plant as a whole. Although the city had issued permits for the use by the claimant of a steam boiler and hoisting apparatus in South street to raise the coal from the barges to its carts it is said that these permits were illegal as authorizing nuisances and an improper use of South street. Whatever rights the Muhlenberg Coal Company had under the deed to it and its predecessors in title from the city by reason of cranage privileges in South street or on the bulkhead, we need not now consider. Even if the steam apparatus were improperly in the street there is evidence that the coal could have been lifted from the barges to the carts by "floating dig-gers" placed alongside the barges as has been done in the

city by other coal dealers. The commissioners found that the existence of the unloading apparatus at the point at which it existed was not an essential factor in the operations of the claimant.

It is further said that the Muhlenberg Coal Company had no exclusive use of the wharfage rights, and that the same were under the control and regulation of the dock department.

The rights, in this instance, might well be valued according to the long-established usage. For over twenty-two years sufficient wharfage privileges were provided to establish and maintain a fairly profitable coal business. With the taking of these rights the tangible property of the company has depreciated in value. We can see no real distinction in principle between this and the *Erie Railroad Company* case. The fact that the transportable property of the railroad company was taken from wharf to upland on tracks over a public street is not essentially different from the taking of coal from barges in carts over an intervening highway to adjoining coal pockets. The methods of operation might be different but the law applicable should be the same.

Evidence was offered before the commission which need not here be detailed to show that the Muhlenberg Coal Company has sustained about $45,000 in damage. There was ample evidence to justify the commission in awarding $20,000. This finding should not have been disturbed.

For the reasons here given so much of the order of the Appellate Division as affirms the award of $250,000 for parcels B, C and D should be reversed and the matter remitted to Special Term for a reapportionment of damages under the rule here stated either before the same or a new commission. That part of the order of the Appellate Division affirming the order of the Special Term setting aside the award of $20,000 damages to the Muhlenberg Coal Company should be reversed and the report of the

commission in this particular affirmed. In all other respects the order of the Appellate Division should be affirmed.

COLLIN, CUDDEBACK, CARDOZO and ANDREWS, JJ., concur; POUND, J., dissents; HISCOCK, Ch. J., taking no part.

Orders reversed, and report of commissioners confirmed so far as the award of damages to Muhlenberg Coal Company for injury to plant, with costs in all courts to said claimant. Order of Appellate Division so far as it reverses order of Special Term denying confirmation of report of commissioners awarding $250,000 for parcels B, C and D, and directing reappraisal, etc., reversed and that of Special Term affirmed, with costs to abide event. Otherwise order affirmed, without costs.